In the Matter of W.E. ROSS, a/k/a Gene Ross, a/k/a Walter E. Ross, a/k/a Eugene Ross, and Elizabeth W. Ross, Individually and Jointly and d/b/a W.E. Ross Farms & Ranch, Debtors.

**Bankruptcy No. 83–70049–VAL.**

United States Bankruptcy Court,
M.D. Georgia,
Valdosta Division.

July 12, 1988.

C. George Newbern, Valdosta, Ga., John T. Croley, Jr., Fitzgerald, Ga., for trustee.

Dolly H. Todd, Columbus, Ga., Mark W. Roadarmel, Estate Adm'rs, U.S. Bankruptcy Court, Macon, Ga., for Estate.

## MEMORANDUM OPINION AND ORDER

ROBERT F. HERSHNER, Jr., Chief Judge.

This Chapter 7 case is before the Court for a review of the attorney fees and expenses disbursed by Mr. C. George Newbern, Trustee, on December 30, 1983 to Mr. John T. Croley, attorney for Trustee. This Chapter 7 case was assigned to the undersigned Judge upon the retirement of Judge Algie M. Moseley on March 31, 1986.

In 1982, Mr. W.E. Ross and Mrs. Elizabeth Ross, Debtors, found themselves in a state of financial distress. Debtors attempted unsuccessfully to liquidate their assets in order to pay their creditors. One

of the assets that Debtors were unable to sell was a twenty-five percent interest in a closely held corporation. As pressure from creditors steadily increased, Debtors sought the advice of Mr. Ross' nephew, Mr. Terrence Paulk, who practiced law in Fitzgerald, Georgia. After discussing the situation with Debtors, Mr. Paulk contacted Mr. John T. Croley to discuss possible tactics that Mr. Ross might use to force a sale of his interest in the closely held corporation.[1] Mr. Croley informed Mr. Paulk that he knew of no method whereby Debtors could realize the value of their stock in the closely held corporation, unless Debtors could force a dissolution of the corporation. After discussing the situation over a period of days, Debtors requested Mr. Croley's professional assistance in liquidating their stock, offering him the case on a one-third contingency fee basis.

Mr. Croley stated that he was hesitant to accept the case because he felt that he would face a high risk of not being paid. Mr. Croley told Mr. Paulk that if Mr. Ross and his wife would file a bankruptcy petition, then he would be willing to handle the litigation on a contingency fee basis. Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on March 16, 1983, in the Valdosta Division of this Court.[2] On April 7, 1983, Trustee entered into a contract with Mr. Croley, employing him as his attorney for the purpose of recovering and liquidating property of the bankruptcy estate. The employment contract provided that Mr. Croley would be compensated on a contingency basis of one-third of the net recovery to the bankruptcy estate. In the contract, the parties expressly stipulated that payment of any fee to Mr. Croley was subject to the provisions of section 328(a) of the Bankruptcy Code, which allow a bankruptcy judge to award compensation different from that agreed upon if the original agreement appears to have been improvident in light of subsequent developments.[3] Trustee did not file a petition to employ Mr. Croley until August 4, 1983. Judge Moseley signed the order of appointment on August 4, 1983.[4]

Mr. Croley was employed primarily to liquidate Debtors' interest in the closely held corporation. With this goal in mind, Mr. Croley devised a strategy to force a dissolution of the corporation if the other shareholders refused to buy back Debtors' shares for a reasonable price. The strategy was successful, as the other shareholders agreed to purchase Debtors' interest for $500,000. Because the other shareholders were willing to settle the matter, no litigation occurred. The notice of sale filed by Trustee on September 1, 1983[5] states that Debtors' property, including Debtors' interest in the closely held corporation, was to be sold at a private sale pursuant to a sales agreement dated August 3, 1983.[6] The sale of assets occurred on October 18, 1983, and Trustee filed a report of sale on November 28, 1983.[7]

On December 6, 1983, Trustee filed a notice of proposed disbursements which indicated that unsecured creditors would be paid sixty cents on the dollar. Trustee proposed to pay Mr. Croley attorney fees in the amount of $77,452.52 and expenses of $1024.42. The attorney fees proposed represent twenty percent of the net recovery

---

1.  Mr. Croley stated in his place that Mr. Paulk consulted him because he knew that Mr. Croley had significant litigation experience and Mr. Paulk did not feel capable of undertaking potentially intense litigation. Although Mr. Croley represented a creditor of Mr. Ross, Mr. Croley stated that such representation did not influence Mr. Paulk's decision to contact him.

2.  When Debtors' petition was filed, Judge Algie M. Moseley presided over the Valdosta Division.

3.  11 U.S.C.A. § 328(a) (West 1979).

4.  No explanation for the delay in seeking court appointment of Mr. Croley was offered at the hearing held before this Court on January 4, 1988.

5.  Although the notice of sale was filed with the Court on September 1, 1983, the notice itself is dated September 16, 1983.

6.  The petition to employ Mr. Croley as attorney for Trustee would thus appear to have been submitted after execution of the sales agreement.

7.  November 28, 1983 was also the bar date for filing proofs of claim.

to the bankruptcy estate. Mr. Croley explained at the hearing held on January 4, 1988, that he reduced his fee from one-third to twenty percent because he had not had to litigate any issues.

On December 6, 1983, Trustee submitted a proposed order allowing Mr. Croley attorney fees in the amount of $77,452.52. Judge Moseley did not sign this order; instead, he attached a note to the proposed order stating that he would not need to sign the order unless objections to Mr. Croley's requested fees were filed.

Three unsecured creditors did, in fact, file objections to the proposed disbursements and, in particular, to the amount of attorney fees requested by Mr. Croley. Upon learning of the filing of these objections, Mr. Croley also filed an objection to the proposed disbursements. In his objection dated December 26, 1983, Mr. Croley requested attorney fees in the amount of $129,087.33, an amount equal to the one-third contingency fee originally contemplated. On the same day he filed his objection, Mr. Croley sent a letter to all creditors, advising them of the objections filed by the three unsecured creditors and informing them that, in light of these objections, he felt compelled to raise his fee request. Mr. Croley also stated in his letter that, due to the objections, creditors would be further delayed in receiving their money. On December 23, 1983, the National Bank of Fitzgerald (Bank) also filed an objection to the proposed disbursements. Specifically, the Bank objected to the allowance of the claims of two of the objecting unsecured creditors. All of the objections were withdrawn without explanation on December 30, 1983, and Trustee disbursed the funds on that date.

At a status conference held on August 17, 1987, this Court was made aware that the disbursement to Mr. Croley had been made without a court order. The Court, having some concern over the propriety of such a practice, held a further hearing on the matter on January 4, 1988 so that the Court could hear from both the Trustee and Mr. Croley.

█ At the hearing held on January 4, 1988, Mr. Croley questioned the procedural necessity of a court order authorizing the payment of attorney fees. Specifically, Mr. Croley contended that under section 102 of the Bankruptcy Code and rule 203 of the former Bankruptcy Rules,[8] a court is not required to review applications for attorney fees and to enter an affirmative order awarding such fees unless a party in interest objects to the fees requested. Mr. Croley noted that objections to his fees had been filed, however he emphasized that these objections had been withdrawn. Mr. Croley, therefore, asserts that no court order awarding him attorney fees is required. Trustee concurs in Mr. Croley's position.

Having reviewed the case law on this point of procedure, the Court finds that the position taken by Mr. Croley and the Trustee cannot be sustained. Section 328 of the Bankruptcy Code authorizes a trustee to employ an attorney on any reasonable terms, subject to court approval.[9] Section 328 further provides that a court may compensate the attorney according to different terms, if the court finds the original terms to be improvident in light of subsequent developments.[10] Section 330 of the Bankruptcy Code authorizes the court to award to an attorney employed by the trustee "reasonable compensation for actual necessary services." [11]

Case law firmly establishes that the bankruptcy court has an affirmative obligation to evaluate the reasonableness of compensation to professional persons independent of any objection by a party in interest. *See, e.g., In re NRG Resources, Inc.,* 64 B.R. 643, 650 (W.D.La.1986); *In re Athos Steel & Aluminum, Inc.,* 69 B.R. 515, 520, 15 Bankr.Ct.Dec. 455, 458 (Bankr.

8. Debtors filed their bankruptcy petition prior to the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, therefore the law in existence prior to that Act controls the issues before the Court.

9. 11 U.S.C.A. § 328 (West 1979).

10. *Id.*

11. 11 U.S.C.A. § 330 (West 1979).

E.D.Pa.1987). The task of monitoring attorney fees in insolvency proceedings is one "from which a conscientious bankruptcy judge cannot shrink nor abstain since the supervision of professional fees is essential to the operation of the bankruptcy laws, integral to the bankruptcy system and required by the Bankruptcy Code." *In re Daylight Transport, Inc.,* 42 B.R. 20, 21 (Bankr.E.D.N.Y.1984). In *In re Wildman,*[12] the Bankruptcy Court for the Northern District of Illinois stated:

> The bankruptcy judge has a duty to challenge requested fees *sua sponte....*

If no objections are raised to a fee request, the Bankruptcy Court is still not bound to award the fee as prayed. It has the independent authority and responsibility to determine the reasonableness of all fee requests, regardless of whether objections are filed. *In re NRG Resources, Inc.* 64 B.R. 643, 650 (W.D. La.1986); *In re Affinito & Son, Inc.,* 63 B.R. 495, 497 (Bankr.W.D.Pa.1986); *In re Esar Ventures,* 62 B.R. 204, 205 (Bankr.D.Hawaii 1986); *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 585 (Bankr.D.Utah 1985); *In re Wilson Foods Corp.,* 36 B.R. 317, 320 (Bankr.W. D.Okl.1984.)

The commentators agree. As one states, "... the court continues to retain the ultimate responsibility for ensuring that the compensation awarded to professional persons falls within the parameters prescribed by section 330." 2 *Collier on Bankruptcy,* Paragraph 328.02 at 328–8 (15th Ed.1986). Others are more specific: "Even if no party in interest objects ... the court should review the application to make sure the compensation sought has been earned and is reasonable." R.E. Ginsberg, *Bankruptcy,* Paragraph 4501 (1985). "The bankruptcy judge can and must apply his own expertise *sua sponte,* if necessary, in order to be fair to both counsel and creditors because, in the final analysis, either excess generosity or extreme miserliness in allowing fees will reflect in the public perception of the system." Lavien, *Fees as Seen from the Bankruptcy Bench,* 89 Com.L.J. 136, 138 (March 1984).

The need for independent judicial review underlies the established requirement that attorneys present detailed records of their "actual, necessary" services under Code section 330.

> ....

Clearly, the bankruptcy judge has the broadest discretion to review and question applications for compensation. Indeed, he has the inescapable statutory responsibility to do so.

*In re Wildman,* 72 B.R. at 705, 15 Bankr. Ct.Dec. at 1191–92.

This Court is in agreement with the conclusion reached by the court in *In re Wildman* regarding the judicial duty to review fee applications. The funds of a bankruptcy estate are trust funds. The Court has a duty to see that these funds are administered in a manner consistent with the intent of the Bankruptcy Code. This duty exists independent of any objections that may be filed by parties in interest. Thus, an attorney for the trustee may only receive payment pursuant to a court order authorizing the trustee to disburse such funds. Since no court order was ever entered authorizing Trustee to disburse funds of the estate to Mr. Croley, the Court must, at this time, review Mr. Croley's fee application and determine the amount of compensation to which he is entitled based upon his services rendered.

■ Initially, the Court notes that an order appointing Mr. Croley to serve as attorney for Trustee was not entered until August 4, 1983. Although Trustee and Mr. Croley entered into an employment contract on April 7, 1983, Trustee and Mr. Croley failed to seek court approval of this contract until August. The itemization of time submitted to the Court by Mr. Croley includes time for services rendered prior to his court appointment. It is not the practice of this Court to award compensation to attorneys for services rendered prior to court appointment, however, since Mr. Croley was to be compensated on a contingency fee basis and since it appears that Trust-

---

**12.** 72 B.R. 700, 15 Bankr.Ct.Dec. 1189 (Bankr.N.    D.Ill.1987).

476

ee is at least partially responsible for the delay in Mr. Croley's appointment, this Court will consider all of the services rendered by Mr. Croley when making its determination of "reasonable compensation," with the exception of the services noted below.

■■■ In his itemization of time expended, Mr. Croley included 14.5 hours for services rendered before he contracted with Trustee to serve as attorney. Since no employment contract existed when these services were performed, the Court will not consider the time expended on these services when making its determination of appropriate compensation.[13]

■■ Assuming arguendo that the remainder of time included in Mr. Croley's itemization is properly compensable, then Mr. Croley is requesting payment for 129.2 hours of attorney time. Trustee disbursed to Mr. Croley the sum of $77,452.52 as compensation. This amount reflects a twenty percent contingency fee, which is admittedly less than the amount Mr. Croley originally contracted to receive. This amount also reflects compensation equivalent to a rate of $599.47 per hour. The Court finds this amount to be unwarranted in light of the circumstances of this case.

Trustee, with court approval, employed Mr. Croley and agreed to compensate him on a one-third contingency basis because all parties were anticipating that complex litigation would be necessary to liquidate Debtors' stock in the closely held corporation. In reality, the matter was settled in a quick and efficient manner without resorting to litigation. In light of the fact that Mr. Croley's skills as a litigator were not needed and a satisfactory settlement was quickly achieved, the Court finds that the original terms and conditions of Mr. Croley's employment were improvident. The Court therefore concludes that it must allow compensation different from the com-

pensation to which the parties originally agreed. The Court has this power under section 328(a).

The Court is aware that Mr. Croley voluntarily received less compensation than he originally contracted to receive. The Court notes, however, and the Court wishes to emphasize to the parties concerned, that under section 328(a) it is the Court that has the authority to alter the amount of compensation. This Court will not delegate that power.

In determining the amount of attorney fees to which Mr. Croley is entitled, the Court is mindful of the fact that Mr. Croley faced a risk of nonpayment. The Court also gives consideration to the fact that, at the initiation of the case, complex litigation seemed imminent. Accepting a case under such circumstances is commendable, and judicial policy considerations mandate that such representation be encouraged.

The Court must not let such considerations blind it to the reality of the case itself, however. In the case at bar, no litigation was necessary and the entire controversy was smoothly completed in a matter of months. Section 330 of the Bankruptcy Code authorizes payment of reasonable compensation.

After careful review of the history of this case, the Court finds that Mr. Croley should be awarded attorney fees equal to ten percent of the net recovery to the bankruptcy estate. Thus, Mr. Croley is entitled to attorney fees in the amount of $38,726.26.

■■ As to Mr. Croley's request for expenses, the Court notes that Mr. Croley seeks $700 as reimbursement for the fee charged by a certified public accountant whom Mr. Croley hired to assist him in this case. The employment of the accountant was done without court approval. Because court approval was not obtained, Mr. Croley is not entitled to reimbursement for this

---

**13.** The Court notes that Mr. Croley has included in his itemization time spent on performance of services which are properly the duty of the trustee. If the Court were awarding Mr. Croley compensation based upon an hourly rate, then time spent on these services would be disal-

lowed in determining the proper compensation. Since Mr. Croley was employed on a contingency fee basis, however, the Court need not determine the exact amount of time for which Mr. Croley should be compensated.

expense. The Court thus awards Mr. Croley reimbursement of expenses in the amount of $324.42.

Accordingly; it is

ORDERED that John T. Croley, attorney for Trustee, has rendered valuable legal services to the estate of W.E. Ross, a/k/a Gene Ross, a/k/a Walter E. Ross, a/k/a Eugene Ross, and Elizabeth W. Ross, Individually and Jointly and d/b/a W.E. Ross Farms & Ranch, Debtors, and hereby is allowed $38,726.26 as compensation for said services; and it is further

ORDERED that Mr. Croley has disbursed $324.42 on behalf of Debtors for reasonable and necessary expenses incurred in connection with the above-mentioned legal services and hereby is allowed reimbursement of these disbursements.