**In re MALCON DEVELOPERS, INC., Debtor.**

**Bankruptcy No. 87–01254.**

United States Bankruptcy Court, N.D. New York.

Jan. 31, 1992.

Michael J. Balanoff, Syracuse, N.Y., trustee.

John A. DeFrancisco, Syracuse, N.Y., Sp. Counsel to trustee.

Ernstrom & Estes, Prior co-counsel, Rochester, N.Y., Ted Baum, of counsel.

William F. Larkin, Asst. U.S. Atty., Syracuse, N.Y., for I.R.S.

Green & Seifter, P.C., Syracuse, N.Y., for David Henig; Robert K. Weiler, of counsel.

Richard Croak, Office of U.S. Trustee, Utica, N.Y., for U.S. Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court considers herein the Application of John A. DeFrancisco ("DeFrancisco") as Special Counsel to the Trustee,

which seeks a fee of $993,541.73, reimbursement of expenses in the sum of $27,-984.05 and payment of litigation services in the sum of $15,714.76.

The Application appeared on the Court's motion calendar at Syracuse, New York on December 3, 1991. Written Objections to the Application were filed by the United States Trustee ("UST") and Barry, Bette and Led Duke, Inc. ("BBL") a creditor.

Following oral argument, the Court reserved decision and took this contested matter under advisement.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A) and (O).

### FACTS

On September 4, 1987, Malcon Developers, Inc. ("Debtor") filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").

Prior to the date of filing, the Debtor had retained DeFrancisco, then apparently a partner in the Syracuse, New York law firm of DeFrancisco, Menkin and Brunetti, as co-counsel with the Rochester, New York law firm of J. William Ernstrom and Associates ("Ernstrom") to commence litigation in New York State Supreme Court, Onondaga County against a number of defendants, which shall be known collectively as "Pyramid" to recover on various theories of liability for alleged wrongdoing in connection with a construction project known as the "Salmon Run Mall" in Watertown, New York.

It appears that DeFrancisco and Ernstrom jointly commenced two separate lawsuits against Pyramid in the fall of 1986 and almost simultaneously therewith Pyramid commenced an action against the Debtor.[1]

As of the date of Debtor's Chapter 11 filing, none of the three lawsuits had reached the trial stage and it further appears that at some point prior to the Chapter 11 filing, Ernstrom had withdrawn from its co-counsel status with DeFrancisco because it had not been paid by Debtor. (*See* Supplemental Affidavit of DeFrancisco sworn to December 2, 1991, para. 13).

On or about September 30, 1987, Debtor submitted an application to this Court seeking the appointment of DeFrancisco to continue the Pyramid litigation. The application seeking appointment disclosed the existence of a claim held by DeFrancisco for pre-petition legal services in connection with the Pyramid litigation, which the Debtor had agreed to pay for at the rate of $100 per hour. In a supporting affidavit, DeFrancisco also acknowledged the existence of the pre-petition fee arrangement whereby he had been billing Debtor at the rate of $100 per hour. (*See* Exhibit D attached to the Application of DeFrancisco sworn to Nov. 11, 1991).

On September 30, 1987, this Court, by letter, advised Debtor's counsel, for purposes of the Chapter 11 case, James R. Resti, Esq. ("Resti"), that it would not appoint DeFrancisco on an ex parte basis unless he was "willing to waive his claim." (*See Id.* Exhibit E).

DeFrancisco then submitted an Attorney's Supplemental Affidavit sworn to January 4, 1988, in which he agreed to "waive my claim for pre-filing legal fees and to litigate the above noted case (Pyramid litigation) on a contingent fee basis. Under the terms of this contingency arrangement, which has been agreed to by James Malvasi, Vice President of the Debtor-in-possession, my fee would be based upon one-third of the total recovery in the litigation or

---

1. It is to be noted that in both actions commenced by the Debtor, as well as the action commenced by Pyramid, there is a co-plaintiff/defendant, Karame Builders Ltd., which was also represented by DeFrancisco and Ernstrom. The Court has been advised by letter from the Attorney for the Trustee dated January 24, 1992, in response to its inquiry, that the amount on which DeFrancisco has computed his one-third fee is the amount which represents the Debtor's portion of the Settlement and, therefore, the Debtor's estate is not bearing any portion of Karame's legal expenses.

$50,000, whichever is greater." (*See Id.* Exhibit F).

On March 10, 1988, the Court signed an Order Authorizing Employment of Attorney For Pending Litigation. ("Chapter 11 Order of Appointment"). The Chapter 11 Order of Appointment referenced the application of the Debtor and the two affidavits of DeFrancisco and directed his appointment as Debtor's counsel in the pending Pyramid litigation. The last ordering paragraph provided,

> ORDERED that the payment of any fee to said attorney will be made only upon application to the Court accompanied by contemporaneous time records.

(*See Id.* Exhibit G).

Thereafter, and for reasons not relevant here, the Debtor's Chapter 11 case was converted on motion of the UST to a case under Chapter 7 of the Code by Order dated May 1, 1990. Michael Balanoff, Esq. was appointed Trustee in the Chapter 7 case.

On May 8, 1990, the Trustee obtained an Order of this Court continuing DeFrancisco as "Special Counsel" to the Trustee "under the same terms and conditions as set forth in the order of this Court dated March 10, 1988." ("Chapter 7 Order of Appointment"). *Id.* Exhibit H.

It appears that at or about the time of the Chapter 7 Order of Appointment all three pending lawsuits went to trial in the state court. The trial before a jury lasted thirty-three days, involved twenty-five witnesses, two hundred thirty-one exhibits and forty-four hundred pages of testimony. (*Id.* at pg. 3, para. 8).

At the conclusion of the trial, the jury returned a verdict of $2,162,527.98 in compensatory damages, plus interest and $5,000,000 in punitive damages, in favor of the Debtor, as well as a "no cause for action" in Pyramid's action against the Debtor.

Consequently, Pyramid then made several post-trial motions to include motions to set aside the verdict, motion to stay the enforcement of the judgment pending appeal, and motions to permit Pyramid to post the Mall itself as security for a stay pending appeal rather than a statutory bond. Pyramid actively pursued the appeal and on the eve of oral argument in the state appellate court, the parties agreed to a settlement subject to the approval of this court.

That settlement, which results in a payment to the Trustee of slightly more than $3,000,000, was in fact approved by an Order of this Court dated December 6, 1991.

The Application of DeFrancisco, which covers a period from October 29, 1985 through November 11, 1991, itemizes 1,923.3 out-of-court hours and 184.2 in-court hours. The Application, however, seeks a one-third contingency fee of $993,-541.73, plus reimbursement of expenses in the sum of $27,984.05, and payment of "other litigation services" totalling $15,-714.76.

## ARGUMENTS

Both the UST and BBL oppose DeFrancisco's request for a one-third contingency fee on the basis that it was not authorized by this Court in either the Chapter 11 Order of Appointment or the subsequent Chapter 7 Order of Appointment which merely incorporated the terms of the Chapter 11 Order by reference.

Additionally, the UST contends that the fee as requested is excessive; that DeFrancisco agreed to be compensated at an hourly rate of $100 and that he cannot be paid for services rendered prior to his appointment in the Chapter 11 case under the prevailing law in this Circuit.

BBL argues that it is both a pre and post Chapter 11 creditor of the Debtor, having filed a proof of claim in the total amount of $172,265.17, and that if DeFrancisco is granted a one-third contingency fee, there will be insufficient assets to pay all creditors. Similar to the argument of the UST, BBL points to DeFrancisco's waiver of any fee for pre-petition services and also questions the role of DeFrancisco in representing Karame Builders, Ltd., a co-plaintiff in both lawsuits instituted by the Debtor, as well as his contention that the representation of the Debtor in this litigation preclud-

ed him from representing other clients in complex legal matters. Though not submitting any papers, the IRS, Ernstrom, and the Chapter 7 Trustee orally supported the Application.

DeFrancisco argues that he was in fact appointed on the basis of a one-third contingent fee and that is why he waived his prepetition claim for services of approximately $50,000. He points to his Attorney's Supplemental Affidavit of January 4, 1988, which he contends clearly states his intention to proceed on the basis of a contingent fee, and to the Chapter 11 Order of Appointment which makes specific reference to that Attorney's Supplemental Affidavit.

DeFrancisco also cites the risk he assumed in proceeding with the Pyramid litigation, contending that given the Debtor's financial status, unless he was successful, there would be little chance of his recovering any fee.

He makes reference to the lack of any interim fee application during all of the years the Pyramid litigation was ongoing as indicative of his understanding that his fee would be contingent upon its outcome.

## DISCUSSION

Had the Chapter 11 and Chapter 7 Orders of Appointment clearly spelled out DeFrancisco's retention on a one-third contingency basis, much of the dispute now before the Court would be unnecessary.

█ It must be borne in mind, however, that even if the fee arrangement of a professional appointed in a bankruptcy case is clearly and unambiguously spelled out in the order of appointment, Code § 328(a) allows a bankruptcy court to alter the terms of that compensation "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Matter of Lytton's,* 832 F.2d 395, 400 (7th Cir.1987); *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1257 (5th Cir. 1986); *In re Confections by Sandra, Inc.,* 83 B.R. 729, 731 (9th Cir. BAP 1987); *In re Benassi,* 72 B.R. 44, 47 (D.C.Min.1987); *In*

*re Kucek Development Corp.,* 113 B.R. 652, 656, n. 4 (Bankr.E.D.Cal.1990); *In re Cal Farm Supply Co.,* 110 B.R. 461, 465 (Bankr.E.D.Cal.1989); *In re Grabill Corp.,* 110 B.R. 356 (Bankr.N.D.Ill.1990); *Matter of Ross,* 88 B.R. 471, 473 (Bankr.M.D.Ga. 1988).

█ DeFrancisco contends that he was appointed to represent the Trustee on the basis of a one-third contingent fee and though neither Order of Appointment specifically authorizes such a fee arrangement, he points to his agreement with the Debtor at the time of the Chapter 11 Order of Appointment, as well as the content of his Attorney's Supplemental Affidavit of January 4, 1988, which was specifically referenced in the Chapter 11 Order.

The UST and BBL conversely point to the language of the Chapter 11 Order of Appointment which provides "that the payment of any fee to said attorney will be made only upon application to the Court accompanied by contemporaneous daily time records" as proof that DeFrancisco was appointed on an hourly basis.

It appears that the inconsistency between the Attorney's Supplemental Affidavit of January 4, 1988 and the Chapter 11 Order of Appointment may have resulted from the fact that the Appointment Order was drafted by Debtor's general counsel, James Resti, Esq., prior to the preparation of DeFrancisco's Supplemental Affidavit, and not revised prior to its submission to this Court for signature.

There appears to be little doubt, upon considering the Attorney's Supplemental Affidavit of January 4, 1988, and DeFrancisco's actions thereafter, that he reasonably believed that he was proceeding with the Pyramid litigation on the basis of a one-third contingent fee.

Further, it is not uncommon for this Court to require the submission of contemporaneous time records by a professional who has been initially appointed on a contingent fee basis, because the Court is charged with a duty under Code § 328(a) to re-evaluate the fee arrangement at the time of awarding compensation where such an arrangement proves to be "improvident

in light of developments not capable of being anticipated at the time of fixing such terms and conditions."

Thus, the Court does not believe that the requirement imposed on DeFrancisco that he provide contemporaneous time records prohibits his being compensated on a one-third contingency.

Nobody, including BBL, disputes the fact that the results obtained by DeFrancisco in the Pyramid litigation were perhaps beyond all reasonable expectations and that while the hours actually expended by him at an hourly rate of $100 would approximate less than 25% of the fee requested, he should be adequately compensated.

DeFrancisco cites the fact that he persevered where others would have despaired. In fact, it is suggested that Ernstrom did despair and withdrew its representation of the Debtor when it was not being periodically paid for its pre-petition services.

DeFrancisco assumed the risk, even to the point of waiving his pre-petition fee of some $50,000, that the Debtor would be successful in the pending litigation. He points out, if the litigation failed, he would have been paid nothing, and at that point would have forfeited any chance of recovering on his prepetition claim for legal services.[2]

Clearly, DeFrancisco took a chance and won a verdict which was subsequently reduced by stipulation on the eve of the argument of Pyramid's appeal, but which nevertheless represents a significant infusion of monies into Debtor's estate.

Were DeFrancisco representing a party outside of bankruptcy on a contingent fee basis, there would be no question raised as to payment of his fee, but that is not the case, and while the drafters of the Bankruptcy Reform Act of 1978 sought to move away from the pre-Code "economy of administration" standard and toward a "cost of comparable services" standard, awarding of compensation in bankruptcy cases still requires this Court to balance the in-terests of the appointed professional versus the unsecured creditors, priority or otherwise.

BBL makes the argument that if De-Francisco is paid the requested fee, there will be insufficient funds to pay all creditors. That, however, is flawed reasoning. Nowhere does the Code provide that *all* creditors, regardless of the nature of their claims, be paid in full or even pro rata before professionals may be fully compensated. BBL contends that there appears to be a total of $2.3 million in pre-petition claims and $3.4 million in post-petition claims in this case to be charged against projected total assets of $3.6 million, including the Pyramid recovery.[3]

In balancing the interests of various types of creditors, the Court must acknowledge that in enacting Code § 507, Congress intended to elevate certain types of claims over others. Clearly, at the highest level of priority claims are professional fees. *See* Code §§ 507(a)(1) and 503(b)(2). Further complicating the analysis in this case, is the fact that there are apparently Code § 507(a)(1) claims incurred in the Chapter 7 case which are granted priority over Code § 507(a)(1) claims incurred in the Chapter 11 case. *See* Code § 726(b).

▉ Thus, the fact that payment of De-Francisco's requested fee will significantly reduce, if not altogether eliminate any distribution to the holders of a particular class of claims, is not, standing alone, a basis for denying the fee.

In *In re Confections by Sandra, Inc.,* *supra,* 83 B.R. at 731, the 9th Circuit Bankruptcy Appellate Panel (BAP), in reversing the bankruptcy court which had refused to honor a contingency fee arrangement specifically included in the order of appointment, concluded that the lower court had failed to "make any specific finding that the originally approved fee arrangement was 'improvident in light of developments unanticipated'."

---

2. Actually, DeFrancisco's Attorney's Supplemental Affidavit of January 4, 1988 references a one-third fee or $50,000, whichever is greater.

3. This analysis apparently does not include De-Francisco's fee request as a post-petition claim.

The BAP observed that "the notion of economy of administration was changed by the enactment of §§ 328 and 330. (citing cases). The basis for abandoning the old notions of economy in the area of fixing fees was that it discouraged qualified practitioners from entering the bankruptcy practice." *Id.* at 732.

Factually, *In re Confections by Sandra, Inc., supra,* is similar to this case in that the BAP noted at pg. 732,

That, absent the approved fee arrangement, this case presented a substantial reimbursement risk to counsel. The evidence before the appointing Judge was that the Trustee could get no other attorney in the community to take the case and that the case involved difficult obstacles because many of the debtor's records had been destroyed or lost in the fire. Also, it is undisputed that all parties were satisfied with the results obtained from the court approved settlement. Without the approved fee arrangement, it is doubtful that the appellant would have agreed to take the case.

While it is true that the order of appointment in *In re Confections by Sandra, Inc., supra,* specifically employed counsel on the terms set forth in the application for appointment, which in turn outlined a contingent fee arrangement, here the Chapter 11 Order of Appointment did reference DeFrancisco's Attorney's Supplemental Affidavit of January 4, 1988, which encompassed the contingent fee arrangement he relies upon.

Furthermore, and while not in and of itself controlling, it is apparent that Debtor and DeFrancisco also arrived at a one-third contingent fee agreement. (*See* DeFrancisco's Supplemental Affidavit sworn to December 2, 1991, Exhibit 1).[4]

Were it not for a lack of artful draftsmanship on the part of Debtor's counsel in crafting the Chapter 11 Order of Appointment so as to spell out the contingent nature of DeFrancisco's fee arrangement, there would be no dispute at present and the Court would be left to re-examine that arrangement under Code § 328(a).

The Court must also consider its prior award of a one-third contingent fee to DeFrancisco in compensation for services rendered in connection with the so-called Stone & Webster litigation. (*See* Order dated December 12, 1990).

The UST argues correctly that its failure to oppose a contingent fee in that litigation does not preclude it from challenging the identical fee arrangement here because it warned DeFrancisco at the time of the hearing on the Stone & Webster fee application that it would do so. While the Court fails to see any merit in that position, the Court does give consideration to the UST's secondary argument that the hours consumed by DeFrancisco in the Stone & Webster litigation more reasonably supported the fee sought there.

Nevertheless, as the District Court observed in *In re Benassi, supra,* 72 B.R. at 49, citing *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green,* 778 F.2d 890, 894 (1st Cir.1985), "to deny the fee now because it exceeds time charges and looks high in hindsight would penalize counsel for a job well done and would tell counsel and all other attorneys that they should think twice before again working for persons or businesses in bankruptcy proceedings."

Here DeFrancisco clearly assumed the risk of less than full payment if not non-payment for his services. His co-counsel, Ernstrom, had already made a decision to withdraw for non-payment and his client had recently filed a petition under Chapter 11. He was told that if he maintained the rather tenuous pursuit of the Pyramid litigation, he would have to waive his prepetition claim for services in order to continue representing the Debtor.

In the face of such apparent adversity, DeFrancisco opted to move ahead, but only on the condition that if Debtor was successful, he too would be successful.

4. As initially filed with the Court, DeFrancisco's Supplemental Affidavit sworn to December 2, 1991 had attached as Exhibit 1 an agreement regarding a different litigation. The correct agreement was handed to the Court at oral argument.

Unlike special counsel in *In re Church-field Management & Inv. Corp.*, 98 B.R. 893, 899 (Bankr.N.D.Ill.1989), DeFrancisco did face a strong adversary and the litigation was clearly complex and voluminous, particularly for a solo practitioner unlike that experienced by counsel in *Matter of Ross, supra*, 88 B.R. at 476. While it is true that the Pyramid litigation was ultimately settled for significantly less than the amounts awarded by the jury, such a settlement can hardly be considered a negative factor.

The Court must conclude that this is indeed a unique case in that the fee sought by DeFrancisco is perhaps the largest ever awarded by this Court to a solo practitioner, but the amount of the fee is not controlling.

The Court must and has balanced the award of such a fee against the interest of all creditors herein and having done so concludes that DeFrancisco is entitled to a contingent fee of $993,541.73.

In light of the contingent nature of the fee, the Court will not consider the "per se" argument raised by BBL with regard to the pre-appointment hours. Further, the Court will treat the fee as a Code § 503(b)(2) administrative expense in the Chapter 7 case, the jury verdict and ultimate settlement having occurred within that case.

The Court turns to the costs and disbursements sought by DeFrancisco and will approve same in full ($27,984.05) after having reviewed the Supplemental Affidavit filed and sworn to by DeFrancisco on December 2, 1991.

With regard to the "Litigation Expenses" sought by Ernstrom and James J. Tansey totalling $15,714.76, the Court denied same at oral argument upon the ground that neither professional was ever appointed herein, though they may have an independent claim based upon applicable state law.

IT IS SO ORDERED.