In re OMEGAS GROUP, INC., Debtor.

Bankruptcy No. 3–90–03276(2)17.

United States Bankruptcy Court,
W.D. Kentucky.

Jan. 16, 1996.

Cathy S. Pike, Goldberg & Simpson, Louisville, KY, for debtor.

John Wilson, Trustee, Louisville, KY.

J. Baxter Schilling, Louisville, KY, for trustee.

Joseph J. Golden, Assistant U.S. Trustee, Louisville, KY.

### MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is presently before this Court on the Objection of the United States Trustee ("UST") to the Application for Attorney's Fees filed by J. Baxter Schilling ("Schilling"), counsel for the Trustee, John Wilson ("Wilson"). The UST objects to the one-third contingency fee Schilling seeks to recover in connection with the Counterclaim which he successfully litigated on the Debtor's behalf against System Software Associates, Inc. ("SSA").

Having fully reviewed the briefs filed by both parties, as well as having fully considered the evidence and arguments presented by both parties at the December 6, 1995 hearing and the December 15, 1995 hearing, this Court overrules the UST's Objection in part and sustains it in part. The UST's Objection is sustained only to the extent of $3,040.00, which Schilling concedes represents a duplication of services provided by Schilling in his defense of the main action filed by SSA against Omegas and for which Schilling has already received compensation at an hourly rate. The UST's Objection is otherwise overruled.

### FACTS

The Debtor, Omegas Group, Inc. ("Omegas"), filed for protection under Chapter 11 of the Bankruptcy Code on October 16, 1990. During the proceeding, numerous adversary proceedings were filed against Omegas, including the adversary proceeding at issue commenced by SSA. At that time, Omegas was represented by the law firm of Goldberg & Simpson.

Schilling's first introduction to Omegas's bankruptcy action was in the limited context of an adversary proceeding filed by XL/Datacomp, Inc. ("Datacomp"). One week before the Datacomp case was to be tried in December of 1990, Goldberg & Simpson discovered it had a conflict of interest which barred it from representing Omegas in the Datacomp litigation. Consequently, Goldberg & Simpson contacted Schilling to represent Omegas as special counsel in this isolated case, and four days thereafter the case proceeded to trial. Omegas lost at the trial level due to the then existing status of the law on constructive trusts, a pivotal issue in that litigation. Schilling, however, aggressively took the case up on appeal where he was successful in instrumenting a change in the law of constructive trusts in the Sixth Circuit.

While Schilling represented Omegas in this very limited context during the pendency of the Chapter 11, it is clear from the evidence presented at both hearings that his defense as special counsel in the Datacomp case was the full extent of his involvement with Omegas. He was clearly not involved with assisting Omegas in its daily attempts to reorganize under Chapter 11, nor was he involved in the pre-bankruptcy planning that occurred before the Chapter 11 was filed. In fact, the testimony at the hearings on this matter established that following the Datacomp trial, Schilling was offered employment as general counsel for Omegas, which he expressly declined.

On May 1, 1991, Omegas's bankruptcy action was converted to a Chapter 7. Thereafter, John Wilson was ultimately appointed Trustee. Wilson approached Schilling with the intent of retaining him to assist the Trustee with the legal issues arising in the Chapter 7 case. However, Schilling was extremely reluctant to get involved in the case. Schilling testified that there was approximately $100,000.00 in assets in the estate at the time of conversion. There were numerous lawsuits and significant claims pending against Omegas. Schilling, himself, had been awarded a significant fee for handling the Datacomp case, but had not been successful in recovering payment. There were insufficient funds to pay his fee and the claims, and also litigate the adversary proceedings.

Moreover, Omegas's position initially looked rather bleak with regard to many of these adversary proceedings. For example, Goldberg & Simpson had negotiated a settlement on behalf of Omegas with regard to the SSA litigation which called for Omegas to pay SSA $90,000.00. That settlement, however, was never finalized and soon fell through following conversion of the case to Chapter 7.

After much negotiation, Wilson and Schilling were finally able to agree to employment terms which Schilling found acceptable enough to entice him to represent Wilson as Trustee. The agreement reached was based on a combination of an hourly fee and a contingency fee arrangement. Schilling was to be compensated by three methods: (1) a 20% contingency fee in the XL/Datacomp case; (2) a 33⅓% contingency fee with regard to all preference and fraudulent conveyance actions; and (3) an hourly fee of $155.00 for all other matters.

This employment contract was incorporated into Trustee's Application to Employ Schilling as Counsel, which was filed with this Court. We granted 20 days to all interested parties to object to Schilling's employment as counsel for the Trustee. No objection was filed by any party, including the UST. Consequently, this Court entered an Order approving the Application to Employ Schilling.

At the time Schilling agreed to the terms of the employment contract, the Counterclaim had already been filed by Goldberg & Simpson on Omegas's behalf in the SSA case. Both Wilson and Schilling testified that at the time they agreed to the terms of Schilling's representation, they firmly believed that the Counterclaim asserted by Omegas was a preferential or fraudulent transfer action. They thought Schilling would receive one-third of all sums recovered as his fee. This testimony is supported by the fact that three of the four fee applications heretofore filed by Schilling with this Court in connection with the Omegas case specifically reference the SSA case, and state that Schilling was employed on a contingency basis to represent the Trustee's interest in the SSA Counterclaim.

Several theories of recovery were pursued by the Trustee pursuant to the Counterclaim filed against SSA. While the Counterclaim against SSA retained elements of a preference action and fraudulent conveyance action, the theories of implied contract and unjust enrichment came to the forefront as newly discovered evidence surfaced through discovery late in the litigation process. It was not until late summer of 1995 that Schilling took a series of depositions which exposed crucial and new evidence, putting the case into an entirely different light and creating new grounds to support Omegas's contract theories. As a result of that evidence, Schilling was ultimately able to reach a settlement of the Counterclaim pursuant to which SSA agreed to pay Omegas $1,000,-000.00.

## LEGAL DISCUSSION

The UST objects to the one-third contingency fee sought by Schilling with regard to the SSA Counterclaim, on the following grounds:

(1) Schilling's appointment under § 327 of the Code was in error, because Schilling was not disinterested;

(2) The application to employ counsel states that the contingency fee of ⅓ relates to fraudulent transfer and preference actions, and the SSA Counterclaim was not such an action;

(3) Schilling did not itemize his legal services;

(4) Schilling's total compensation in this case has been unreasonable; and

(5) Schilling's contingency fee duplicates his hourly rate.

This Court rejects grounds one through four, finding from the evidence that Schilling's employment in this action was proper and he is entitled to the fee which he seeks. This Court finds it unnecessary to specifically address grounds two, three and four asserted by the UST in support of his Objection, as this Court is empowered by § 328(a) to enhance Schilling's fees, whether they be hourly or contingent in nature. Finally, with regard to the fifth ground, Schilling has conceded that his contingency fee duplicates his hourly rate to the extent of $3,040.00.

## I. *SCHILLING WAS PROPERLY EMPLOYED AS TRUSTEE'S COUNSEL UNDER § 327.*

■ The UST's challenge of Schilling's employment under § 327 is both procedurally and substantively erroneous. Wilson filed an Application to Employ Schilling as counsel in July of 1991. This Court granted a 20 day period during which any interested party, including the UST, could object to Schilling's employment. However, no objection was filed by any creditor, by the UST, or by any other party in interest. Accordingly, this Court entered an Order dated August 16, 1991, appointing Schilling as counsel for Wilson. The UST did not at any time move the Court to reconsider that Order, nor was any effort made to appeal that Order. *In re Federated Dep't. Stores, Inc.,* 44 F.3d 1310, 1314 (6th Cir.1995) (adjudicated a direct appeal from an Order appointing a professional); *In re Middleton Arms Ltd. Partnership,* 119 B.R. 131, 132–134 (M.D.Tenn.1990) (also adjudicating a direct appeal from an Order appointing a professional), *aff'd,* 934 F.2d 723 (6th Cir.1991).

Moreover, the UST did not object to or even file a comment with regard to the Applications for Attorney Fees filed by Schilling on December 1, 1992, June 9, 1993, and April 13, 1994, each of which expressly stated that Schilling's representation was on a contingency fee basis with regard to the Trustee's Counterclaim against SSA. Accordingly, the UST is now, nearly four and one-half years after Schilling's employment, procedurally barred from arguing that the appointment of Schilling as counsel for Wilson was improper under § 327.

■ This Court furthermore rejects the UST's substantive argument that it was error under § 327(e) for Schilling to be employed as Wilson's counsel. Section 327(e) is permissive in nature, empowering the Trustee, with the court's approval, to employ "for a specified special purpose" an attorney that has previously "represented the debtor." The section, however, states that such an attorney may not be employed by the Trustee to represent him or her "in conducting the case." 11 U.S.C. § 327(e). This Court has reviewed the legislative history of this provi-

sion and agrees with Schilling that it should be construed to mean that *general counsel* of the debtor is prohibited from being employed as *general counsel* to the Trustee. It should not be construed to mean that *special counsel* for the debtor is prohibited from acting as general counsel to the Trustee.

Congress's intent in enacting § 327(e) is clear from a review of the legislative history. *See House Report* No. 95–595, 95th Cong., 1st Sess. 328 (1977); *See also Senate Report* No. 95–989, 95th Cong., 2d Sess. 38 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Debtor's *general* counsel presumably has already investigated certain activities of the debtor, and advised the debtor how to proceed. If the Trustee then subsequently hired the debtor's general counsel, then the Trustee's counsel could not independently review the debtor's conduct prior to and during the Chapter 11 proceeding.

Such is not the case with an attorney who is employed to represent the debtor in one special and isolated instance prior to the appointment of a Trustee. In this case, Schilling represented Omegas in one isolated litigation during its Chapter 11, and then only because Omegas's *general* counsel, Goldberg & Simpson, realized it had a conflict within one week of the scheduled trial in the case. Section 327(e) simply does not make sense when applied to those circumstances. Schilling, unlike Omegas's *general counsel,* was not directly involved with assisting Omegas in its daily attempts to reorganize under Chapter 11, nor was he involved in the pre-bankruptcy planning that occurred before the Chapter 11 was filed.

Accordingly, § 327(e) was not intended to prohibit special counsel, such as Schilling, from being employed to represent the Trustee. Thus, Schilling's employment was proper.

## II. *DUE TO THE EXTRAORDINARY TIME AND EFFORT REQUIRED IN THIS CASE, THE COMPLEXITY OF THE ISSUES, AND THE PHENOMENAL RESULTS ACHIEVED, THIS COURT AWARDS SCHILLING ATTORNEY FEES IN THE AMOUNT OF $330,293.33.*

■ Schilling seeks recovery of his one-third contingency fee under § 328(a). That

section of the Bankruptcy Code grants the court broad discretion in regulating the terms, conditions and payment of professional persons. Section 328(a) reads:

11 U.S.C. § 328. Limitation on compensation of professional persons

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer or an hourly basis, or on a contingent fee basis. *Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.*

Accordingly, the bankruptcy court is expressly empowered to "totally disregard an employment agreement where necessary and award compensation more appropriate under the individual circumstances of the case." *In re Financial News Network, Inc.,* 134 B.R. 732, 735 (Bankr.S.D.N.Y.1991); *In re Land,* 138 B.R. 66, 71 (Bankr.D.Neb.), *aff'd,* 994 F.2d 843 (8th Cir.1992). Moreover, "the court's power includes the power to increase as well as decrease the agreed-upon compensation." *In re Land,* 138 B.R. at 71.

■ An increase in compensation is appropriate where the parties did not foresee "the time, the pressures, or the complexity of [the] case or the phenomenal results achieved." *In re Warrior Drilling & Eng'g Co.,* 9 B.R. 841, 847 (Bankr.N.D.Ala.), *modified on other grounds,* 18 B.R. 684 (Bankr. D.C.Ala.1981); *In re Malcon Developers, Inc.,* 138 B.R. 677 (Bankr.N.D.N.Y.1992). In fact, the *In re Warrior* case held that such factors were sufficient to make an original agreement, which was entered into for maximum compensation at an hourly rate, " 'improvident,' within the meaning of § 328(a)." 9 B.R. at 847; *See also Malcon Developers,* 138 B.R. at 680–81.

■ The courts which have awarded an increase under § 328(a) have focused specifically on the following factors:

(1) The attorney seeking compensation had a reasonable belief that he was providing representation on a contingency fee basis;

(2) The results obtained went beyond reasonable expectations;

(3) The attorney assumed great risk in taking on representation of the case;

(4) The attorney persevered where others would have curtailed their efforts;

(5) The attorney's efforts resulted in a significant infusion of funds into the debtor's estate;

(6) The attorney faced a strong adversary and unforeseen pressures; and

(7) The litigation was voluminous and complex.

*See In re Malcon Developers,* 138 B.R. at 680–81; *In re Warrior,* 9 B.R. at 847; *In re Land,* 138 B.R. at 71.

Each of these factors is present in the case at bar. First, Schilling clearly had a reasonable belief that he was proceeding with the SSA Counterclaim on the basis of a one-third contingency fee. Both Schilling and Wilson testified under oath that when the Application to Employ Schilling was filed, they firmly believed that the SSA Counterclaim was a preferential or fraudulent transfer action, which was to be litigated on a one-third contingency fee basis pursuant to the terms of the employment contract. This testimony is supported by the fact that three of the four fee applications heretofore filed by Schilling in connection with the Omegas case specifically reference the SSA Counterclaim and state that Schilling was employed on a contingency basis with regard thereto.

Moreover, neither Schilling nor Wilson were involved in the filing or litigation of the SSA lawsuit during the Chapter 11 proceeding; thus, they had no first hand knowledge of this lawsuit. Several theories of recovery were pursued by Wilson and Schilling with regard to the Counterclaim following Schilling's employment. While the theories of implied contract and unjust en-

richment eventually came to the forefront as newly-discovered evidence surfaced through the discovery process, the Counterclaim retained elements of a preference action and fraudulent conveyance action. It was not until late summer of 1995, that a series of depositions exposed crucial new evidence that caused the case to shift dramatically, creating new grounds to support Omegas's contract theories. It was that evidence that led to the settlement of the Counterclaim. Nevertheless, this Court notes that the settlement reached was a settlement of *all claims*.

Accordingly, it is apparent that Schilling had a reasonable belief right up until close to the settlement of the action that the Counterclaim was a preferential or fraudulent transfer action and that he was to be compensated on a one-third contingency basis.

With regard to the second and third factors, it is clear from the evidence that it appeared highly unlikely through much of the litigation that the Trustee, Wilson, would be able to recover anything on the Counterclaim. Thus, Schilling not only assumed a great risk in taking on representation of the case, but his recovery of one million dollars for the estate was clearly beyond all reasonable expectations. This Court specifically notes that during the pendency of Omegas's Chapter 11, before the case was converted, Omegas had settled the SSA litigation, including the Counterclaim, whereby Omegas had agreed to pay to SSA approximately $90,000.00. Moreover, that settlement had tentatively been approved by the Court when it was announced in open court. That settlement was never finalized, however, and, after conversion, ultimately fell through, presumably due to the fact that SSA believed it could recover an even larger sum from Omegas.

Along those same lines, it is also abundantly clear that Schilling persevered where many attorneys would likely have curtailed their efforts, which ultimately resulted in a significant infusion of funds into Omegas's bankruptcy estate. The actual cash that Schilling has brought into the estate totals $2,669,253.03 ($1,213,577.82 in Datacomp; $455,675.21 in ICC/Beaver Dam; and $1 mil-

lion in SSA). While the recovery of nearly $2.7 million in any bankruptcy case is quite unusual, it is particularly astounding in this case as it was believed that there would be no recovery at all when the case was initially converted.

Furthermore, in addition to obtaining approximately $2.7 million for the estate, Schilling has successfully negotiated waivers and releases from various creditors in amounts totalling: (1) $71,004.62 in Chapter 7 administrative claims; (2) $253,127.04 in Chapter 11 administrative claims; and (3) $3,317,823.25 in unsecured claims. Thus, the benefit which has actually been achieved by Schilling is truly staggering in light of the fact that the Omegas bankruptcy action initially appeared to be a no, or an extremely minimal, distribution case. At the present time, the parties estimate that if Schilling's present fee application is approved, he is awarded the remainder of his fee in the ICC litigation, his hourly rate fee outstanding is paid, and the Trustee, Wilson, is awarded his maximum statutory commission in the case, the dividend in this case will be as follows: Chapters 7 and 11 administrative expenses will be paid in full; priority creditors will be paid in full; and, unsecured creditors will receive approximately a 50% dividend.

Finally, this Court notes that Schilling faced a strong adversary, and the litigation was clearly complex, voluminous and involved unanticipated pressures. At least one bankruptcy court has indicated that additional weight is to be accorded these particular factors when the attorney seeking compensation is a *solo practitioner*, as is Schilling. *In re Malcon Developers*, 138 B.R. at 683. Wyatt, Tarrant and Combs, a very large and well-respected law firm, represented SSA. At all times there was a minimum of three attorneys plus numerous paralegals, law clerks and other support staff involved in the representation of SSA. Furthermore, the Wyatt firm took an extremely adversarial approach in its representation of SSA. Nearly all of Schilling's discovery requests were met with opposition, with the Wyatt firm filing Motions to Quash and Motions for Protective Orders. In addition to these motions, Schilling was also required to file sev-

eral Motions to Compel. Moreover, counsel for SSA was not exactly accommodating when they eventually did comply with discovery requests. Schilling testified that frequently after waging a full-blown discovery battle, they would eventually respond to discovery requests by sending Schilling large boxes of unorganized documents, without any explanation whatsoever. Additionally, Schilling testified that he experienced much trouble in obtaining simple Answers to Interrogatories. This resulted in additional Motions to Compel and the taking of depositions to "decipher" the responses ultimately received.

Schilling was also required to defend against two separate Motions for Summary Judgment. In August of 1994, SSA filed a Motion for Partial Summary Judgment, which the Court overruled. SSA then filed a Motion to Reconsider which was also overruled. SSA filed another Motion for Partial Summary Judgment in the summer of 1995, which required extensive research and the filing of lengthy briefs. The case settled before that motion was decided. During the summer of 1995, Schilling's perseverant discovery efforts unveiled evidence to support Omegas's contract theories. This led Schilling to schedule many depositions in August and September of 1995, which spanned a three state radius. Schilling testified under oath that he spent almost every moment of his work hours on this case, alone, during those months. This time was spent both taking depositions and organizing his demonstrative proof in preparation for trial (which this Court notes filled six bankers boxes).

Accordingly, this Court concludes that Schilling engaged in outstanding litigation efforts, which resulted in a phenomenal recovery for the bankruptcy estate. The effort expended by Schilling unequivocally surpasses that which would usually be put forth by competent counsel. Thus, it is entirely appropriate for this Court to exercise its discretion pursuant to § 328(a) and award a fee to Schilling of $330,293.33. Any other result would be "improvident" within the meaning of § 328(a).

### III. SCHILLING SHALL NOT BE AWARDED $3,040.00 OF THE $333,333.33 CONTINGENCY FEE WHICH HE SEEKS, AS SUCH AMOUNT REPRESENTS DUPLICATIVE CHARGES FOR WHICH SCHILLING HAS ALREADY BEEN PAID.

■ Schilling presently seeks compensation for services rendered for his representation of Omegas in its *Counterclaim* against SSA. He has already been compensated on an hourly basis for his defense of Omegas with regard to the initial claim filed by SSA. Schilling has conceded that in certain instances in the SSA litigation, legal services related to *both* the defense of the claim and the prosecution of the Counterclaim. Schilling reviewed his three prior time reports and found that potentially 19 hours in 1991 and 1992 were spent on both the SSA Counterclaim and the defense of the SSA Complaint. There is no other evidence before the court on any larger number of hours so expended. When his 1992 hourly rate of $160.00 is applied to these hours, it appears there may be a total duplication of $3,040.00 in fees. Schilling consents to a reduction of $3,040.00 in his fee application presently before this Court. Thus, this Court grants a total fee of $330,293.33 ($333,333.33 − $3,040.00), and expenses in the amount of $3,261.56.

### CONCLUSION

For the above stated reasons, this Court by separate Order sustains the UST's Objection to the Application for Attorney's Fees filed by J. Baxter Schilling, but only to the extent of $3,040.00 which represents a duplication of services rendered by Schilling in his defense of SSA's Complaint against Omegas and for which Schilling has already received compensation at an hourly rate. The UST's Objection is otherwise overruled.

### ORDER

Pursuant to the attached Memorandum–Opinion,

IT IS HEREBY ORDERED that the United States Trustee's Objection to the Application for Attorney's Fees filed by J. Baxter Schilling in connection with his representation of John Wilson, Trustee for the

bankruptcy estate of Omegas Group, Inc., in its Counterclaim against Systems Software Associates, Inc. be, and is, **SUSTAINED** to the extent of $3,040.00, representing a duplication of services rendered by Schilling in his defense of SSA's Complaint against Omegas.

IT IS FURTHER ORDERED that the United States Trustee's Objection to Application of Attorney's Fees filed by J. Baxter Schilling be, and hereby is, otherwise **OVERRULED.**

FINALLY, IT IS HEREBY ORDERED that the Trustee shall pay to J. Baxter Schilling, as an attorney fee for all legal services rendered this estate in connection with the Counterclaim filed against Systems Software Associates, Inc., in the sum of $330,293.33 and shall reimburse J. Baxter Schilling the sum of $3,261.56 for all expenses advanced to the estate in connection with that Counterclaim.

This is a final Order, there being no just cause for delay.