**In re Galen Monroe OAKES, Beulah Lehman Oakes, Debtors.**

**Bankruptcy No. 690–01663.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 22, 1991.

Gordon W. Johnston, Porter, Wright, Morris & Arthur, Columbus, Ohio for Aetna Life Ins. Co.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The law firm of Michaels & McGown [1], along with co-counsel Harry W. Schwab (collectively, Counsel), has submitted its Third Application for Interim Compensation and Reimbursement of Expenses for the period May 1, 1991 through August 31, 1991 (Application) as counsel for Galen Monroe Oakes and Beulah Lehman Oakes, debtors in possession (collectively, Debtors). Counsel requests $93,340.00 in fees and reimbursement of $5,744.91 in expenses. An objection to the Application was filed by Aetna Life Insurance Company (Aetna). Counsel responded to that objection and oral hearing took place October 8, 1991.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes the court's findings of fact and conclusions of Law pursuant to Fed.R.Bankr.P. 7052.

## FACTS

Debtors filed their Chapter 11 petition on August 14, 1990. Michaels & McGown

1. Only the services of Andrew J. Michaels of

submitted its application for employment as Debtors' counsel on September 19, 1990, which was approved by this court October 5, 1990. The court awarded $41,412.00 in interim compensation and reimbursement of $1,913.87 in expenses by order of February 14, 1991. A 20% holdback on fees was implemented by the court at that time. All travel time billings have been paid at 50% of Counsel's hourly rate.

On March 4, 1991, Harry W. Schwab applied for appointment as additional general retainer counsel for Debtors. His employment was approved on March 22, 1991. Counsel's Second Interim Fee Application was approved in the amount of $61,195.20 in compensation and $2,965.15 in reimbursement of expenses on June 10, 1991. The court again imposed its 20% holdback requirement, thus deferring payment of $15,298.80.

## DISCUSSION

■ 11 U.S.C. § 331 permits an award of interim compensation to a professional employed under Sections 327 or 1103 of the Code.

> [The professional] may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application for reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

Section 330(a) delineates the standard by which any application for fees and expenses must be evaluated:

> (1) reasonable compensation for actual, necessary services rendered ... based on the nature, the extent and the value of such services, the time spent on such services, and the cost of comparable services other then in a case under this title; and,

that firm are covered by this Application.

(2) reimbursement for actual, necessary expenses.

Aetna sets forth several bases for its request that Counsel's fee application be denied in full. Most of Aetna's dissatisfaction evolves from Debtors' instigation of or involvement in numerous matters of litigation, both in this court and in state courts. Aetna urges that there has been no showing that services in connection with that litigation have produced or will produce any benefit to the estate, and it is therefore premature to award fees at this time.

The court's holdback scheme, described above, was imposed, at least in part, to address this very issue. Counsel is actively involved in matters which may indeed show a benefit to the estate once a plan is proposed.[2] Debtors own many pieces of commercial real estate, a number of which are the focus of litigation. Counsel provided a description of and progress report on these various matters in their response to Aetna's objection. The court is satisfied that its holdback requirement is sufficient protection, at least at this stage, against the possibility that Counsel's work will ultimately prove not to be beneficial to the estate.

■ Aetna does, however, pose a valid objection to Counsel's fees incurred in defending the dischargeability action brought by Century Surety Company against Debtors. Although no Bankruptcy Court in the Northern District of Ohio has addressed this exact issue in a reported opinion, one court in this district considered the issue of compensation for defending a debtor against an objection to discharge action. *In re Hunt,* 59 B.R. 842 (Bankr.N.D.Ohio 1986). The *Hunt* opinion held that such services were personal to the debtor and did not benefit the estate, citing the "well-established rule" that services which only benefit the debtor are not compensable from the estate. *Id.* at 843, *citing Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir.1974). The thrust of this approach is to further the debtor's fresh start "while not putting the full burden of the debtor's legal expenses on the estate and, consequently, the creditors." *In re Zweig,* 35 B.R. 37, 38 (Bankr.N.D.Ga.1983). The sole appellate court to consider compensation for a dischargeability defense held that legal services performed by debtor's counsel in defending a dischargeability action benefited only the debtor, not the estate, and denied the requested fees. *In re Reed,* 890 F.2d 104 (8th Cir.1989). The Bankruptcy Court for the Southern District of Ohio considered this issue prior to the *Reed* opinion and also ruled that the services were non-compensable. *Matter of Vlachos,* 61 B.R. 473 (Bankr.S.D.Ohio 1986); *Cf. In re Hunt,* 124 B.R. 263 (Bankr.S.D.Ohio 1990) (services must benefit estate, not debtor, in order to be compensable). The *Reed* opinion characterizes its result as following the overwhelming weight of authority in both Chapter 7 and Chapter 11 cases and this court has found nothing to dispute that statement. 890 F.2d at 106 (collecting cases). The court will therefore reduce Counsel's fees in the following amounts for services rendered in the Century Surety dischargeability action.[3]

| Andrew J. Michaels | 25.7 hours at $200/hr. | = | $5,140.00 |
|---|---|---|---|
| | 1.0 hour travel at $100/hr. | = | 100.00 |
| | Total reduction | = | $5,240.00 |
| | | | |
| Harry W. Schwab | 28.1 hours at $150/hr. | = | $4,215.00 |
| | 3.5 hours travel at $75/hr. | = | 262.50 |
| | Total reduction | = | $4,477.50 |

**2.** Debtors are currently operating under a third extension of the exclusivity period in which to file a reorganization plan. The period will expire December 6, 1991.

**3.** Counsel claims that this action is part and parcel of other actions which are currently pending in state court involving Century, Debtors and others. The court disagrees, but will not delete those fees that are indicated in the Application as only pertaining to the state court actions.

The aggregate fees disallowed concerning the Century Surety action are $9,717.50.

 Aetna was the only party involved in this case which objected to Counsel's fees. This sole voice is actually one more, in the court's experience, than usually steps forth to complain about professional compensation, a subject which seems these days to attract more attention in news media articles than in the courts where it can be effectively addressed. The court, while conducting its own otherwise unassisted review of the Application, notes that Counsel has billed at full hourly rates for such tasks as obtaining hearing dates, filing pleadings, copying, exhibit preparation, forwarding documents, preparing a certificate of service and ordering a transcript. When questioned about this by the court at hearing, Attorney Michaels explained that his office employs no associates, paralegals or support personnel other than secretaries. Due to the shortage of staff on certain occasions, Counsel felt it more efficient to accomplish some of these tasks themselves rather than take a secretary away from office duties.

In evaluating Counsel's defense of this practice the court concludes that it is actually beside the point as to what individual performed the services. What 11 U.S.C. § 330(a)(1) focuses on is whether the services were actual and necessary, and what is reasonable compensation based on the type, extent and value of those services. A seminal case on the topic found the appropriate distinction to be between "legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers ..." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974); *See also In re Continental Ill. Sec. Litigation*, 750 F.Supp. 868, 885 (N.D.Ill.1990) (in fixing hourly rates, appropriate for court to distinguish between trial work and office work).

While the court acknowledges Counsel's attempts to conserve time and personnel, the fact remains that it clearly cannot approve billings of $150.00 to $200.00 per hour for tasks which could be performed by a paralegal or office staff as described above. The court has isolated 13.1 hours of Attorney Michaels' time and 9.7 hours of Attorney Schwab's time which was spent doing work of a clerical nature. The court will reduce the rate for this time to $50.00 per hour, which it finds for purposes of this decision to be a representative rate for compensation to paralegals in this jurisdiction. These reductions total $2,935.00.

In sum, Counsel's Application requested a total gross compensation of $93,340.00. This figure has been reduced by $9,717.50 for billings disallowed in the Century Surety dischargeability action, and $2,935.00 charged for work which amounted to clerical services. Counsel will be awarded, as interim compensation, the remaining sum of $80,687.50, less a 20% holdback, or $64,550.00 and $5,744.91 in reimbursement of expenses.

An order in accordance herewith shall issue.