**In re Dennis LAND and Carla Land.**

**Nos. 4:CV91–3246 to 4:CV91–3248.**

United States District Court,
D. Nebraska.

Feb. 6, 1992.

---

Clay B. Statmore, Lincoln, Neb., for debtors.

Jerry L. Jensen, Omaha, Neb., U.S. Trustee.

## MEMORANDUM AND ORDER

URBOM, Senior District Judge.

Clay Statmore, an attorney at law and former counsel to the debtors in this Chapter 11 bankruptcy proceeding and related adversary proceedings, appeals the decision of the bankruptcy court[1] requiring him to disgorge all attorney fees paid him by the debtors. These consolidated appeals, CV91–3246, CV91–3247, and CV91–3248, involve the core bankruptcy proceeding, BK–868, and two adversary proceedings, A88–4025 and A88–4069, respectively. The consolidated appeals involve identical orders of the bankruptcy court and designated records.

The appellant originally stated ten issues on appeal. However, three of those issues have been abandoned either by admission by the appellant or omission of pertinent argument as to those issues. The remaining issues focus on:

    1.  Whether an attorney must disclose fees and seek approval of the Bankruptcy Court of a fee application, if compensation is to be paid with non-estate funds;

---

**1.** The Honorable John C. Minahan, Jr., United States Bankruptcy Judge for the District of Nebraska.

2. Whether the debtors' trucking business was property of the bankruptcy estate;

3. Whether the appellant's legal representation was of no benefit in adversary proceeding A88–4025 and bankruptcy proceeding BK85–868 and, therefore, the fees were excessive regardless of their source; and

4. Whether an explicit day-by-day accounting of an attorney's time is necessary in order to obtain approval of a fee, notwithstanding a compensation agreement between the debtor and counsel that called for a flat fee.

On appeal, the bankruptcy court's findings of fact shall not be set aside unless they are clearly erroneous; conclusions of law will be reviewed *de novo*. *Martin v. United States*, 761 F.2d 472, 474 (8th Cir. 1985). Because I find no error in the bankruptcy court's findings of fact or conclusions of law, I shall affirm the order appealed from.

## I. FACTS

The debtors retained Mr. Statmore as counsel in October 1989. Between that date and September 1990, debtors paid Statmore $6100 for services to be provided in connection with the bankruptcy case and two related adversary proceedings. Statmore failed to file a disclosure of compensation or application for allowance of interim compensation in accordance with Bankruptcy Rule 2016.

Statmore first appeared at a hearing in connection with adversary proceeding A88–4025 on April 4, 1990. However, he did not have court approval to be retained until filing a motion for approval on or about August 22, 1990. The motion for approval of retention was limited to representation in adversary proceeding A88–4069. Statmore did not seek approval for appointment as counsel in the bankruptcy case or the other adversary proceeding. According to Statmore, the debtors agreed to pay him a lump sum of $7500 for his services. He further asserts the debtors paid him only $6000, rather than $6100, because they stopped payment on one check in the amount of $100. The record reveals that each of the honored checks was drawn on an account entitled "Dennis Land Farms, Trucking Division."

Statmore's motion for withdrawal of counsel, filed in October 1990, was granted. During the period of representation, the debtors appeared pro se at numerous hearings and submitted pro se pleadings in each of the adversary proceedings and in the bankruptcy case.

Statmore did not keep records regarding the nature of services he performed, when he performed such services, or the total time he spent on the debtors' cases. Furthermore, he cannot break down his time among the bankruptcy case and the two adversary proceedings but estimates that he spent approximately 5 percent of the time on the bankruptcy case, 35 percent on adversary proceeding A88–4069, and 60 percent on adversary proceeding A88–4025. Statmore argues the funds from which he was paid were not property of the bankruptcy estate because the trucking business involved only leased vehicles and was commenced after the Chapter 11 petition was filed.

In an order dated March 26, 1991, the bankruptcy court denied Statmore all fees relating to the bankruptcy case and related adversary proceedings. The court further ordered that he refund $6100 to the debtors. To date Statmore has refunded $2000 of the fees he collected from the debtors. The bankruptcy court subsequently denied Statmore's motion for reconsideration and additional findings of fact.

In its order the bankruptcy court held that Statmore had violated the Bankruptcy Code and Rules by failing to seek approval for employment by the debtors and to disclose compensation paid or promised by the debtors. Although Statmore argued he had been paid from non-estate funds and so was not required to disclose such compensation, the bankruptcy court held the funds did come from estate property and had to be disgorged because they had not been disclosed and the estate had not benefitted by Statmore's representation. The bankruptcy court made particular note that

Statmore has represented numerous Chapter 11 debtors in that court and that, pursuant to those representations, has sought approval for retention and has filed applications for compensation. According to the court, "it is clear that Statmore was aware of the rules and regulations which he violated by receiving property of the estate."

## II. NEED FOR APPROVAL OR DISCLOSURE REGARDLESS OF SOURCE OF FUNDS

The appellant concedes that an attorney is required to seek court approval for employment by a debtor-in-possession in a Chapter 11 proceeding. Sections 327 and 1007 of the Bankruptcy Code authorize a debtor-in-possession in a reorganization case to employ an attorney to represent and perform services for the estate. However, prior to such employment, an application must be filed with the court setting out specific facts regarding, among other things, the necessity for employment, the professional services to be rendered, and any proposed arrangement for compensation. Bankr.R. 2014(a).

In addition, the Bankruptcy Code and Rules contain provisions regarding compensation for attorneys who have received court approval under section 327. Bankruptcy Rule 2016(b) provides that "every attorney for a debtor, whether or not the attorney applies for compensation," must file a statement pursuant to section 329 of the Bankruptcy Code. Section 329, in turn, provides that:

> "Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."

11 U.S.C. § 329(a) (1988). Section 329(b) authorizes the bankruptcy court to cancel compensation agreements and order the return of any payments "[i]f such compensation exceeds the reasonable value of any such services." *Id.* § 329(b). These sections were enacted in recognition of the fact that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." S.Rep. No. 989, 95th Cong., 2d Sess. 39 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5825.

■ The appellant argues the bankruptcy court is without authority to require disclosure or approval of compensation paid to an attorney, if payment is made with funds that are not property of the bankruptcy estate. I find this position at odds with section 329(b) which authorizes the bankruptcy court to order the return of any excessive fee to the estate or to "the entity that made such payment." 11 U.S.C. § 329(b)(2). A similar challenge was made by the debtor's counsel in *Burd v. Walters,* 868 F.2d 665 (4th Cir.1989). In that case, the bankruptcy court ordered the lawyer to return a portion of the fees paid him for representation of the debtor in state court actions intended to gain bargaining power over a creditor in bankruptcy. On appeal the court of appeals held the state court actions were sufficiently related to the bankruptcy proceedings under Rule 2017(b) to justify the bankruptcy court's review of the fee arrangement. *Id.* at 667. In addition the lawyer argued the court had no authority to review the fees, because he had been paid from exempt funds. The Fourth Circuit, in rejecting this argument, held:

> "Neither § 329 nor B.R. 2017 is conditioned on the source of payment; rather, it depends upon the nature of the services rendered. The provisions are meant to protect the creditors '*and the debtor* against overreaching' by attorneys. This view is consistent with the structure of § 329(b) which allows the court to order the attorney to return excess payments to the estate or even to 'the entity that made such payment.' Accordingly, we

hold that § 329 applies in this case and that the fees in question are subject to the control of the bankruptcy court. We are of opinion that any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment." *Id.* at 668 (citations omitted) (emphasis in original). *See also In re Furniture Corp. of America*, 34 B.R. 46 (Bankr.S.D.Fla. 1983) (to the extent that fees paid were excessive, the excess would be reimbursed to the third party who paid them).

■ The bankruptcy court's decision in the present case is consistent with the reasoning and result in *Burd*. Therefore, it is unnecessary to determine whether the funds from the debtors' trucking business is estate property or not. Because Statmore was employed by the debtors in the bankruptcy case and related adversary proceedings, the bankruptcy court had authority to require approval of representation. The bankruptcy court also had authority to review the fees associated with that representation and to order return of any compensation resulting therefrom regardless of the source of the funds.

## III. BENEFIT TO THE BANKRUPTCY ESTATE

■ The appellant also challenges the bankruptcy court's determination that there was no benefit to the bankruptcy estate. "It is the applicant's burden of proof to establish the compensability of an application." *In re Tri–County Water Ass'n*, 91 B.R. 547, 548 (Bankr.D.S.D.1988). In its order filed March 26, 1991, the bankruptcy court stated:

"Adversary proceeding A88–4069, on which Mr. Statmore estimates he spent 35% of his time, was recently dismissed for failure to obey orders of the court. A plan or reorganization has not been filed in the bankruptcy case, and a motion to dismiss the case is pending. Finally, adversary proceeding A88–4025, where Mr. Statmore estimates he spent 60% of his time, has not moved forward since Mr. Statmore became involved. Mr. Statmore failed to provide any evidence regarding the benefit of his services to the bankruptcy estate."

In response to the appellant's motion for reconsideration, the bankruptcy court further stated:

"[T]he burden of proof with respect to benefit to the bankruptcy estate of legal services rests upon Mr. Statmore; he failed to meet that burden. Not only did Mr. Statmore fail to show that his services benefited the estate, he failed to demonstrate that he provided legal services.... Mr. Statmore did not submit [specific] information to the court and, indeed, admitted that he had not kept track of his time in connection with this case."

The record on appeal is devoid of evidence that any of the cases moved forward during his representation. In a journal entry filed October 19, 1990, the bankruptcy court ordered Mr. Statmore to file statements disclosing all compensation received, the source of the funds paid him, and "the legal services rendered, time expended and expenses incurred on behalf of the debtors in connection with this adversary proceeding (A88–4069] and in connection with Case Numbers BK85–868 and A88–4025." In response, the appellant stated by affidavit:

"9. That the activities that affiant was involved in with regard to his representation of the Lands were as follows: Numerous telephone consultations with the Lands by telephone and in affiant's office, Court appearances in both adversary proceedings, checking out and xeroxing bankruptcy files.

Reviewing the files of the three cases for which affiant was retained as well as a third adversary proceeding by the Debtors as well as the appeal from same, discussing the two adversary proceedings with various attorneys of record by telephone and with one attorney in person in affiant's office, research at the law library with respect to one adversary proceeding, review correspondence and documents received from attorneys in two adversary proceedings, draft doc-

uments filed in two adversary proceedings.

10. Affiant estimates that the total time that he spent on all three cases is well in excess of 40 hours, mostly due to the numerous and lengthy conversations and telephone calls with the Lands and the lengthy time needed to review the Court files in order to make sense out of what transpired prior to affiant being retained. Because the Lands had proceeded pro se, numerous documents were filed that made no sense and it what [sic] difficult to determine the exact posture of the cases."

The appellant's argument, that progress was impeded because the debtors were difficult to work with and the case complex does not rise to the level necessary to meet the appellant's burden of proof. *See, e.g., In re Tri–County Water Ass'n*, 91 B.R. at 550 (interim request for compensation denied where applicant failed to provide sufficient evidence of unsecured assets or unencumbered collateral); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill. 1987) (burden of proof regarding compensation "is not to be taken lightly"). I do not find that the bankruptcy court was clearly in error in its determination regarding benefit to the estate.

## IV. NEED FOR DETAILED ACCOUNTING

■ Finally, citing 11 U.S.C. § 328, Statmore argues that the Bankruptcy Code does not require documentation of services on an hourly basis but actually supports the use of flat fees for legal representation. While it is true that section 328(a) authorizes court approved legal representation of a debtor on "any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis," it also specifically permits the bankruptcy court to approve "compensation different from the compensation provided" by the employment agreement. The court's power includes the power to increase as well as decrease the agreed-upon compensation.

■ The permissiveness of section 328(a), regarding the particularities of a compensation agreement, does not do away with the requirement that counsel document activities undertaken pursuant to that agreement. As noted by the bankruptcy court in another case involving Mr. Statmore, "[e]ven in cases in which the attorney has agreed to handle the entire cases for a flat fee, it is still necessary for that attorney to describe his activities as applied to the case with detail." *In re Fulton*, 80 B.R. 1009, 1011 (Bankr.D.Neb. 1988). In that case, the bankruptcy court specifically indicated that a "detailed breakdown of the work performed and the time expended on each item of business" was to be provided with an application for compensation. *Id.*

■ Statmore was clearly aware that the bankruptcy court would require a detailed record of his involvement in the case. However, he has provided only cursory descriptions of activities undertaken for the Lands without sufficient specificity to enable the court to determine whether the activity served the administration of the estate in any way. Therefore, even if the services had been of benefit to the estate, it was within the bankruptcy court's discretion to deny compensation for failure to comply with the Bankruptcy Code and Rules regarding fee applications. *In re Kroh Bros. Dev. Co.*, 105 B.R. 515, 530–31 (Bankr.W.D.Mo.1989) (court would not condone the filing of an inadequate fee application followed by a refusal to obey court directives). A bankruptcy court abuses its broad discretion as to matters regarding compensation only if it fails to use the proper legal standard or bases its decision on clearly erroneous findings of fact. *Seiler v. First Nat'l Bank (In re Benassi)*, 72 B.R. 44, 46 (D.Minn.1987); *In re McCombs*, 33 B.R. 387, 388 (E.D.Mo.1983), *aff'd*, 751 F.2d 286 (8th Cir.1984). Consequently, because I do not find an abuse of discretion as to this matter, the bankruptcy court's decision will not be disturbed.

## V. CONCLUSION

I fail to find that the bankruptcy court erred in its fact finding or its conclusions

of law. The appellant was correctly required to disgorge all fees paid him by the Lands.

### JUDGMENT

IT IS HEREBY ORDERED that the decision of Bankruptcy Judge John C. Minahan, Jr., in his memorandum of March 26, 1991, is affirmed in all respects.