**In re Lynn BRANDENBURGER, and Valeria C. Brandenburger, Debtors.***

**In re Ardell Francis SEARCY and Bernette Mae Searcy, Debtors.****

**Bankruptcy Nos. * 87–10162–INH, ** 87–10257–INH.**

United States Bankruptcy Court, D. South Dakota, N.D.

July 17, 1992.

J. Bruce Blake, Sioux Falls, S.D., for debtors.

Charles A. Nail, Jr., Sioux Falls, S.D., Asst. U.S. Trustee.

### MEMORANDUM DECISION RE: APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT (BLAKE)

IRVIN N. HOYT, Chief Judge.

The matters before the Court are the Rule 2016(a) Applications for Compensation and Reimbursement (Blake) filed by counsel for Debtors, J. Bruce Blake, and the objections thereto filed by the United States Trustee. These are core proceedings under 28 U.S.C. § 157(b)(2). This ruling shall constitute Findings and Conclusions as required by F.R.Bankr.P. 7052.

## I.

A. Debtors Lynn and Valeria C. Brandenburger's Chapter 12 debt adjustment plan was confirmed by Order entered December 21, 1987. Debtors filed their final account and report on June 10, 1991. Discharge was contested. The Court rendered a decision favorable to Debtors regarding payment of disposable income and an order of discharge was entered March 11, 1992.

Concerned that the Bankruptcy Code may not require him to file a fee application for post-confirmation services, Debtors' counsel by letter to the United States Trustee dated March 2, 1992 inquired what position that office took on the matter. By letter to Blake dated March 16, 1992, Assistant U.S. Trustee Charles L. Nail, Jr., responded that it was the United States Trustee's position that fee applications must be filed for post-confirmation services if compensation is sought from the estate. Nail further opined that under 11 U.S.C. § 1207 an estate in Chapter 12 exists until the case is closed, dismissed, or converted, whichever comes first.

Blake filed a Rule 2016(a) Final Application for Compensation and Reimbursement (Blake) on March 27, 1992 and sought $5,754.00 in compensation and reimbursement less a retainer of $800.00 for services rendered and expenses incurred from March 11, 1991 through March 23, 1992. The United States Trustee filed an objection on April 13, 1992 on the grounds that since Debtors were discharged on March 11, 1992 there was essentially no bankruptcy estate from which the Court could order the fees to be paid. The United States Trustee filed a supplemental objection on April 20, 1992 that argued that the services rendered by Blake regarding whether Debtors had to pay disposable income were not services that benefited the estate and thus could not be compensated as provided in *In re Reed*, 890 F.2d 104 (8th Cir.1989). The United States Trustee did not dispute the validity or necessity of the services rendered nor question the accuracy and completeness of Blake's Application.

A hearing on the Application and objection was held telephonically on April 21, 1992. Appearances included Bruce J. Gering for the United States Trustee and J. Bruce Blake. The parties agreed that Blake could submit as evidence the two March, 1992 letters discussed above. The matter was taken under advisement after arguments of counsel.

The parties entered into subsequent negotiations that culminated in an agreed Amended Order Discharging Chapter 12 Debtors. The agreed order made payment of allowed attorneys' fees a condition of the discharge and excepted from discharge "any balance remaining unpaid of Court-approved compensation for services and reimbursement for expenses previously allowed to debtors' attorney...." The agreed order was entered on July 14, 1992. The issue remaining for the Court is which, if any, post-confirmation services rendered by Debtors' counsel are compensable from the estate.

B. Debtors Ardell F. and Bernette M. Searcy's debt adjustment plan was confirmed on February 8, 1988. They filed their Final Report and Account on January 30, 1992. The only objector to entry of their discharge was Debtors' counsel, J. Bruce Blake. He argued Debtors should not receive a discharge until all court-approved attorneys' fees are paid by Debtors.

Blake filed a final fee application on May 21, 1992 for $1,362.00 in compensation for services and reimbursement of expenses incurred from November 23, 1988 through May 12, 1992. The United States Trustee objected to this application on the grounds that several of the services rendered benefited only Debtors, not the estate, and thus were not compensable from the estate.

Hearings on the objection to discharge and the fee application were scheduled for June 16, 1992. Before the hearing, Blake and the United States Trustee proposed a discharge order that made payment of allowed attorneys' fees a condition of the discharge and excepted from discharge "any balance remaining unpaid of Court-approved compensation for services and reimbursement for expenses previously allowed to debtors' attorney...." The agreed discharge order was entered on

July 13, 1992. Consequently, the sole issue remaining for the Court is which, if any, post-confirmation services by Debtors' counsel are compensable from the estate.

## II.

The United States Trustee's objections to Blake's fee applications raise two questions: whether the Court may approve a fee application in a Chapter 12 case after a plan has been confirmed [1] and, if so, whether the post-confirmation services rendered by Attorney Blake benefited the respective estates. The Code, Federal Bankruptcy Rules of Procedure, and some case law provide the Court with guidance in addressing these issues.

Section 329 of the Code provides: (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

The procedure for filing this required disclosure of compensation is set forth at F.R.Bankr.P. 2016(b). That Rule provides:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. *A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.*

F.R.Bankr.P. 2016(b) (emphasis added). Accordingly, whenever an attorney's fee arrangement with a debtor changes or whenever he receives a retainer or other form of compensation not previously disclosed, the attorney must file a supplemental disclosure of compensation. A fee application is not a substitute for this disclosure. Congress' rationale for this disclosure is clear.

Payments to a debtor's attorney provide serious potential for evasion of creditor protection provision of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 39 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5825, 6285 (cited in *In re McDonald Brothers Construction, Inc.*, 114 B.R. 989, 995 (Bankr.N.D.Ill.1990), and *In re Land*, 138 B.R. 66, 69 (D.Neb.1992)).

---

**1.** The issue of whether a Chapter 12 debtor's counsel may seek compensation from the estate under § 330 after dismissal of a case is not raised or addressed herein. *But see Dahlquist v. First National Bank of Sioux City (In re Dahlquist)*, 751 F.2d 295 (8th Cir.1985). Further, since Attorney Blake and the United States

Trustee agreed to the entry of a discharge order in each case that excepts from discharge allowed attorneys' fees, the Court does not herein address whether a Chapter 12 debtor's counsel may seek compensation from the estate after discharge.

Section 329(a) has broad application. *McDonald Brothers Construction*, 114 B.R. at 995. It requires a debtor's attorney to disclose compensation he has received or expects to receive, regardless of the source of payment or whether the attorney intends to file a fee application for compensation from the bankruptcy estate. *Id.; Land*, 138 B.R. at 69–70.

If the compensation disclosed in § 329(a) "exceeds the reasonable value of any such services" the Court, upon its own motion or the motion of the debtor or the United States Trustee, and after notice and hearing may disgorge the excessive fees. 11 U.S.C. § 329(b) and F.R.Bankr.P. 2017. The United States Trustee assumes a significant role in this review process because it may be the only party in interest, other than the debtor and court, to have knowledge of this compensation.

If a debtor's attorney seeks compensation *from the bankruptcy estate*, § 330 governs. It provides:

> After notice to any parties in interest and to the United States Trustee and a hearing, ... the court may award to a trustee, to an examiner, to ... the debtor's attorney—
> 
> (1) reasonable compensation ...; and
> (2) reimbursement for actual necessary expenses.

11 U.S.C. § 330(a) (in pertinent part). The procedure for filing a fee application is set forth in F.R.Bankr.P. 2016(a):

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, **from the estate** shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered for to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with. the case, and the particulars of any sharing of compensation or agreement or understanding thereof, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required.

F.R.Bankr.P. 2016(a) (in pertinent part; emphasis added). While F.R.Bankr.P. 2016(a) states that the Rule applies only when compensation "from the estate" is sought, § 330(a) does not have the same limiting language. However, since compensation and reimbursement awarded under § 330(a) are an administrative expense under § 503(b)(2) with priority under § 507(a)(1), the Code presumes that fees awarded under § 330(a) are from the estate.

■ In this Circuit, an attorney may be compensated from the bankruptcy estate only when the services rendered benefit the estate. *In re Reed*, 890 F.2d 104, 105 (8th Cir.1989). Consequently, services that benefit only the debtor are not compensable from the estate. *Id.* at 106. Further, the Eighth Circuit has concluded that the prescriptions of § 330 apply equally in liquidation or reorganization cases. *Id.* at 105.

■ Although the phrase "benefit the estate" is not defined in *Reed*, there is no indication that the court intended it to encompass only monetary benefit. *See Reed*, 890 F.2d at 105–06. Instead, the court emphasizes the distinction between services that benefit the estate and those that benefit only the debtor. One court has noted that compensation for services that "benefit the estate" was a standard established under the Bankruptcy Act but that there was no evidence that Congress intended to modify that reasoning when it adopted § 330(a). *In re Ryan*, 82 B.R. 929, 932 (N.D.Ill.1987). Another court, after comparing § 330(a) with its pre-Code predecessor, concluded that the "benefit the estate" standard is subsumed by the "reasonable compensation for actual, necessary servic-

es" standard set forth in § 330(a). *In re Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 485–86 (Bankr.N.D.Ill.1992). Most notable, neither court, like the court in *Reed*, limited "benefit to the estate" to monetary benefit.

■ The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). Except as otherwise provided in the plan or confirmation order, property of a Chapter 12 estate is reconveyed to the debtor at confirmation. 11 U.S.C. § 1207(b). Since a Chapter 12 plan must provide for the full payment of priority administrative claims under § 507 (unless the claim holder agrees otherwise), confirmation of a Chapter 12 plan does not necessarily divest the bankruptcy estate of the property necessary to pay allowed fees for the debtor's attorney. 11 U.S.C. §§ 507(a)(1), 503(b)(2), 1222(a)(2) and 1227(b). *McDonald Brothers Construction*, 114 B.R. at 994. Consequently, a Chapter 12 debtor's counsel may seek compensation from the estate after confirmation under § 330 for services that benefit the estate.[2]

### III.

In both *Brandenburger* and *Searcy*, Debtors' confirmed plans provided that administrative expenses under § 507(a)(1) were to be paid when allowed by the Court. Further, each plan stated that plan payments were to be made from estate property or Debtors' property and that all property of the estate vested with Debtors at confirmation. Accordingly, although estate property was vested in Debtors, that property—though now in Debtors' hands, rather than in the hands of the Debtors-in-possession—was still subject to plan payments, including administrative expenses such as Debtors' attorneys' fees that are allowed by the Court under § 330(a) and § 507(a)(1). *See Kotts v. Westphal*, 746 F.2d 1329 (8th Cir.1984). The language in Rule 2016(a) that the fee application process is reserved for compensation or reimbursement "from the estate" should not be read so narrowly as to preclude entry of a post-confirmation order under § 330(a) regarding fees for a Chapter 12 debtor's counsel.

Having concluded that a Chapter 12 debtor's counsel may file a fee application under § 330(a) and Rule 2016(a) for post-confirmation services that benefit the estate, the remaining question in each of these cases is which, if. any, post-confirmation services rendered by Blake benefited the estate by assisting Debtors with their Code-prescribed duties.

A. In *Brandenburger*, services rendered by Attorney Blake included three general purposes: discharge, which was contested; obtaining court approval of a tractor sale in 1991; and preparation of this fee application.

■ Historically, courts have not awarded compensation under § 330 for services by a debtor's attorney that seek to protect the debtor's discharge or the dischargeability of a certain debt. *See, e.g., Reed*, 890 F.2d at 105; *In re Oakes*, 135 B.R. 511 (Bankr.N.D.Ohio 1991); *In re Bennett*, 133 B.R. 374 (Bankr.N.D.Texas 1991); and *In re Oberreich*, 109 B.R. 936 (Bankr. E.D.Wisc.1990). The Court finds no basis in a Chapter 12 case to deviate from that premise *when discharge is contested.* In this District, compliance with the local rule governing a Chapter 12 discharge generally entails the completion, filing, and service of a final report and account and notice. Local Bankr.R. 309(I). Those services *are compensable* because they are necessary for the administration of the estate. Once discharge is contested, however, whether by an objection for failure to complete plan payments under Local Bankr.R. 309(I) or a complaint seeking revocation of discharge under 11 U.S.C. § 1228(d) for alleged fraud[3], the remaining services are not com-

---

**2.** Compensable post-confirmation services could include those tied to a plan modification since a modified plan "becomes the plan" unless disapproved, 11 U.S.C. § 1229(b)(2), and a modified plan must provide for the full payment of priority administrative claims. 11 U.S.C. § 1229(b)(1).

**3.** The Code's remedy for post-confirmation, predischarge fraud is a motion to dismiss or convert under 11 U.S.C. § 1208.

pensable from the estate because securing a discharge is for the debtor's benefit, not the estate's.

Strong policy arguments exist for the Court to scrutinize all discharge-related fees in a Chapter 12 case. Attorney Blake is correct that an unscrupulous counsel could charge a debtor exorbitant fees when discharge is contested if those fees are not subject to court approval. Or a debtor's counsel could delegate a substantial portion of his fees to discharge services and bypass the application process under Rule 2016(a). Fortunately, the disclosure process under § 329(b) and Rule 2017 allow both the Court and the United States Trustee to review all financial transactions between a debtor and his attorney—whether the compensation comes from the estate, the debtor, or a third party—since *any* payment to a debtor's counsel or fee arrangement related to the bankruptcy case must be disclosed. While a § 329(a) and Rule 2016(b) disclosure statement is not as detailed as a fee application under Rule 2016(a), Rule 2017(a) permits the Court to order a detailed application if the disclosure statement raises any concerns of over-reaching or unreasonableness.

■ In *Brandenburger*, the post-confirmation services itemized on Attorney Blake's application regarding the sale of Debtors' tractor are compensable. The motion for court approval of Debtors' tractor sale was consistent with the administration of the estate and there was no objection by the U.S. Trustee that the services rendered pursuant to the sale did not benefit the estate.

■ In accordance with the Court's earlier decision in *In re Kauer*, Bankr. No. 88–30038, slip op. at 10–11 (Bankr.D.S.D. March 27, 1992), Attorney Blake will be allowed reasonable compensation for preparing his fee application and the necessary expenses for filing and serving the application.[4]

Upon these findings in *Brandenburger*, compensation and corresponding expenses will be allowed from the estate for all entries except those set forth on the second, third, and fourth pages of Blake's itemization of services. This calculates to allowed expenses of $189.59; .6 hours of compensation for J. Bruce Blake's services at $100.00 per hour for $60.00; 8.3 hours of compensation for Thomas A. Blake's services at $80.00 per hour for $664.00; 4 hours of compensation for Joyce P. Gall's services at $50.00 per hour for $200.00; and sales tax of $55.44. Total allowed compensation and reimbursement from the *Brandenburger* estate pursuant to this application is $1,169.03, less the $800.00 retainer already received, for a total amount due of $369.03.

■ B. In *Searcy*, Attorney Blake has sought compensation for general post-confirmation administrative matters, a criminal investigation of Debtors by the United States; a Packers and Stockyards Act appeal, preparation and service of Blake's fee application, and docketing of judgments on earlier fee orders. Based on the explanations offered by Attorney Blake at the hearing, the Court concludes that services and related expenses associated with (1) Debtors' "Packers & Stockyards Appeal"; (2) communications with the FBI, the U.S. Attorney, and Debtors in 1988 regarding a possible criminal prosecution; and (3) docketing of judgments on earlier fee orders are not compensable from the estate because no benefit to the estate was shown.

Second, services rendered on November 30, 1989; December 6, 1991; and April 21, 1992 will not be compensated from the estate because the services were not sufficiently described. *See In re Hanson*, Bankr. No. 386–00136, slip op. at 6–7, 1989 WL 78596 (Bankr.D.S.D. March 8, 1989). Attorney Blake may file an amended application that better describes these services. If allowed, the Court will amend its fee order accordingly.

Third, compensation will not be allowed for filing and serving a motion to discharge non bankruptcy judgments and preparing a proposed order regarding the same. The docket indicates that type of motion was

---

**4.** Defending or amending an application are not compensable from the estate. *In re Kauer,* Bankr. No. 88–30038, slip op. at 10–11 (Bankr. D.S.D. March 27, 1992).

not filed in this case. The service must have been performed in another case and erroneously billed in *Searcy*.

 Finally, all other post-petition services rendered by Blake were necessary to the administration of Debtors' plan or closing the case and thus will be recognized as beneficial to the estate. The compensation for these post-confirmation matters is moderate. Moreover, the Court wants to encourage debtors' counsel not to abandon their debtors when creditors or the case trustee have questions and concerns during the course of the plan.

These conclusions calculate to allowed expenses of $149.36 [5]; compensation for 7.1 hours of services by J. Bruce Blake at $80.00 per hour for $568.00; compensation for 4 hours of services by Joyce P. Gall for $160.00; and sales tax of $43.68 for a total award from the estate of $921.04.

In each case, Debtors will have the personal obligation to pay Attorney Blake for the post-confirmation services that were not recognized as compensable from the estate. While the check for both estate and personal services will be written by the same person from the same check book, the Code and Rules mandate that a distinction between the two sources of compensation—the bankruptcy estate and Debtors—be preserved.

The Court acknowledges that it would be easier for the Court, Office of the United States Trustee, debtors, and debtors' counsel if all post-confirmation services in a Chapter 12 case either were or were not compensable from the estate. As the Code and Rules now stand, however, especially in light of *Reed*, compensation for some post-confirmation services by a debtor's counsel will be examined under a Rule 2016(a) application. Others that do not benefit the estate will be subject only to disclosure under § 329(b) and Rules 2016(b) and 2017. Traditionally in this District, few counsel have filed supplemental disclosure statements pursuant to Rule 2016(b) after they receive their initial retainer or

payment when the petition is filed. With the United States Trustee's cooperation, the Court will make every effort to make debtors' counsel aware of the necessity of doing so. The United States Trustee will then have the duty of insuring that these statements are timely filed and reviewed for reasonableness.

Orders will be entered in conformance with this decision.

---

5. In both the *Brandenburger* and *Searcy* applications, Attorney Blake did not set forth the date each expense was incurred. In the future, the Court would ask that this be done so that an expense may be correlated with a service rendered on the same day.