**In re GRENOBLE APARTMENTS, II, A SD Limited Partnership, Debtor.**

**Bankruptcy No. 91–40574–PKE.**

United States Bankruptcy Court, D. South Dakota, S.D.

August 28, 1992.

J. Bruce Blake, Blake Law Offices, Sioux Falls, S.D., for debtor.

Bruce J. Gering, Office of the U.S. Trustee, Sioux Falls, S.D.

PEDER K. ECKER, Bankruptcy Judge.

On February 14, 1992, Debtor's counsel, Sioux Falls Attorney J. Bruce Blake, submitted a Rule 2016(a) Interim Application for Compensation and Reimbursement seeking $25,492 for services and reimbursement of necessary expenses for the period from August 10, 1991, through February 12, 1992. The Court must determine whether $3,099 of this application, now in dispute, should be awarded. The "Summary" portion of the application and the exhibits attached identify the disputed items: $1,219 for services performed by counsel's Certified Legal Assistant [hereinafter C.L.A.], based on an hourly rate of $57.50, and $1,880 for reimbursement of legal research expense performed by an attorney within counsel's firm.

The two categories were in dispute when Sioux Falls Attorney Bruce J. Gering, representing the United States Trustee, filed an objection to the fee application on February 25, 1992. The objection states that since the Court would not approve $60 per hour for a legal assistant in the Chapter 7 case of *In re Patricia H. Gridley*, 131 B.R. 447 (Bkrtcy.D.S.D.1991), the rate sought in this Chapter 11 reorganization case should also be considered excessive. The legal research expense was objected to because it was performed by an attorney considered by the United States Trustee to be a "professional" whose employment is subject to court approval under the provisions of 11 U.S.C. § 327(a).

On May 11, 1992, an evidentiary hearing was held, oral arguments were made, and the Court took these matters under advisement. The first issue to be decided is whether a certified legal assistant's $57.50 hourly rate of compensation is reasonable, based upon a policy of charging one-half of the attorney's market rate, when a certified legal assistant possesses the skills, qualifications, and experience as shown under the facts of this case. The second issue is whether a senior attorney utilizing the research skills of another attorney within the same firm is considered utilizing a "professional" person subject to the requirements of 11 U.S.C. § 327(a) when the researching attorney does not perform a "central role" in the debtor's reorganization process nor is "intimately involved" in the administration of the debtor's estate.

I.

The C.L.A. in this case testified about her skills, qualifications, and experience. This C.L.A. has been employed by counsel since 1965, first as a legal secretary and then, in 1976, as a legal assistant. In October, 1979, she became the second individual in South Dakota to complete and pass a two-day comprehensive Certified Legal Assistant examination encompassing several specialized areas of law, including bankruptcy. Under the supervision of her em-

ployer, this C.L.A. conducts the initial client interview on behalf of the firm, obtains and organizes information necessary for the 11 U.S.C. § 341 meeting of creditors, completes discovery procedures, and acts as the office business manager. Through the years, she has been involved in major, significant South Dakota cases, and the firm's policy has always been to assess one-half the hourly rate billed by the attorney for the services she provides. In this case, Debtor's counsel charged $115 per hour, and so the C.L.A. billing was calculated at a rate of $57.50 per hour.

Federal Bankruptcy Rule 2016 states, "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." It has been held that fee applications should contain a detailed list of expenses, including the date, the type, and the amount, and that expenses must be actual, not estimated. *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr.E.D.Va.1981). The Court notes there is no opposition to the fact that the fee application in this case complies with the required amount of detail for all services and expenses requested.

■■■■ In addition to submitting a detailed fee application, several other general principles govern the determination of fee awards. First, the burden of proof is on the applicant to show that the amounts requested are reasonable, but the court has independent authority and responsibility to determine the reasonableness of all fee requests. *In re Carter*, 101 B.R. 170, 172 (Bankr.D.S.D.1989). Second, attorney's fees are only compensable if they are rendered for the benefit of the estate. *In re Reed*, 890 F.2d 104 (8th Cir.1989). Third, since compensation of officers is governed by 11 U.S.C. § 330, congressional intent should not be forgotten. Section 330 was enacted to reduce the cost of administering bankruptcy cases. *In re D & W Motel Enterprises, Inc.*, 9 B.R. 355, 357 (Bankr.

D.S.D. 1981). (*See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 330, 331 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6286.)

■■■■ Debtor's counsel states that using paraprofessional persons such as a C.L.A. is a cost-saving measure contemplated by Section 330(a)(1). Testimony was made that without a C.L.A. designation, many of the duties now performed by this C.L.A. would have to be completed by an attorney and billed at the higher attorney rate. This Court agrees that paraprofessionals and professionals should be utilized in such a way as to minimize the cost to the estate. *In re J.F. Wagner's Sons Co.*, 135 B.R. 264, 268 (Bankr.W.D.Ky.1991); *In re Belknap, Inc.*, 103 B.R. 842, 845 (Bankr. W.D.Ky.1989); *In re D & W Motel Enterprises, Inc.*, 9 B.R. at 357. "Senior partners should not perform services which could be as competently performed by associates or are clerical in nature." *In re Belknap, Inc.*, 103 B.R. at 845. "Billing Judgment" is another term used to refer to an attorney's good faith effort to eliminate excessive, redundant, unnecessary fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Using an individual with the appropriate level of skill, experience, and responsibility to perform a particular service, rather than having a senior partner spend time doing the same task, is an illustration of using good "billing judgment." *In re Pettibone Corp.*, 74 B.R. 293, 303 (Bankr.N.D.Ill. 1987). In this case, the Court is convinced that the services performed by counsel's C.L.A. are commensurate to her level of skill, qualifications, and experience and result in a cost-saving benefit to the estate. Those qualifications having been established by testimony, those charges become compensable. *In re Carter*, 101 B.R. 170 (Bankr.D.S.D.1989); *In re Yankton College*, 101 B.R. 151 (Bankr.D.S.D.1989).

■■■■ As to the specific hourly rate calculated for the C.L.A.'s services, this Court has held in the past that counsel adequately explained the policy of billing the C.L.A.'s services at the one-half rate of the attorney's market rate. *In re Quick Release*, 6 B.R. 713, 714 (Bankr.D.S.D.1980).

A reasonable attorney's fee should be calculated on the basis of rates and practices prevailing in the relevant market. Keith J. Shapiro & Matthew E. Wilkins, *Selected Issues Regarding Professional Fees and Expenses in Bankruptcy Cases*, 1991 Ann. Surv.Bankr.L. 147, 178, *citing Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989). The High Court in *Missouri* rejected the State's assertion that the Court should use $15 per hour to compensate a paraprofessional rather than the market rates which were at that time $35 to $50. *Id.*

> "To the extent that fee applicants ... are not permitted to bill for the work of paralegals at market rates, it would be not surprising to see a greater amount of such work performed by attorneys themselves, thus increasing the overall cost of litigation."

*Id.* 491 U.S. at 288 n. 10, 109 S.Ct. at 2471–72 n. 10.

In this case, Debtor's counsel bills his fee according to the market rate. Likewise, the formula to charge one-half of that amount for C.L.A. services is similarly based on this same prevailing market rate. This Court has, in the past, approved of this method, as has the Chief Bankruptcy Judge of this District. *In re Brandenburger*, 145 B.R. 624 (Bankr.D.S.D.1992); *In re Quick Release*, 6 B.R. at 714. And even though the actual dollar amount of the C.L.A. fee is higher in this case than usual, the result is the same: a beneficial and cost-saving rate that is reasonable based upon the formula used. Therefore, the Court will approve the $57.50 rate as requested.

## II.

In the second objection, the United States Trustee raises the issue of who is a "professional person" subject to court approval under Section 327(a). Section 327 applies to debtors-in-possession who seek appointment of counsel and requires court authorization of such appointment before counsel performs services for a debtor-in-possession. *In re T & D Tool, Inc.*, 125 B.R. 116, 120 (E.D.Pa.1991). The purpose of court approval is to ensure, in advance, that debtor's counsel is able to serve the estate and that counsel has no conflict of interest. *Id.* Such conflicts "erode the confidence of the estate to say nothing of public confidence in the administration of justice in bankruptcy courts." *In re Neidig Corp.*, 117 B.R. 625, 629 (Bankr.D.Colo. 1990), *citing In re Fretheim*, 102 B.R. 298, 299 (Bankr.D.Conn.1989).

In determining whether an individual is considered a "professional" subject to Section 327, some courts adopt a "quantitative" test, and other courts adopt a "qualitative" test. In this case, the legal research performed by the attorney in counsel's firm does not fit the meaning of "professional" under either test. Courts using the "quantitative" test look to see if an individual plays a "central role" or is "intimately involved in the administration of the debtor's estate." *In re Neidig Corp.*, 117 B.R. at 628; *In re Fretheim*, 102 B.R. 298 (Bankr.D.Conn.1989); *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y.1981). Courts using the "qualitative" test believe a quantitative approach is difficult to apply and is somewhat arbitrary and inconsistent in results, especially when approval of employment is sought early in the case and the amount of involvement is relatively uncertain. *In re Fretheim*, 102 B.R. at 299. The qualitative test determines the amount of discretion or autonomy that is given to an individual who administers some part of the debtor's estate. *Id.* Under this approach, court approval must be obtained to employ a person with a "relatively small task but a large measure of discretion in performing it but not sought for a person who is to perform an important but nondiscretionary task." *Id.*

Debtor sought and obtained court approval to employ J. Bruce Blake to represent its reorganization proceeding under Chapter 11 of the Bankruptcy Code. The attorney within Mr. Blake's firm provided assistance on four occasions. The legal research dealt with narrow, specific subject matters such as asbestos, assignment of rents clauses, and perfection of assignment of rents, and then the attorney reviewed the opposing party's trial brief. The re-

search, conducted via computer, was not performed by Mr. Blake because he is less proficient using computer research techniques than other attorneys in the firm.

The Court first finds this utilization of resources saved time and, ultimately, expense to the estate. The Court also finds that this limited research was neither a central role to nor an intimate involvement in the administration of this Chapter 11 reorganization case. Neither was there any autonomy or discretion given to the assisting attorney in administrating the case. It was simply a time-saving device. For these reasons, the legal research expense is allowed.

■ Simply because an individual is a member of the legal profession does not automatically subject his services to court approval under 11 U.S.C. § 327(a). Section 327(a) was "not intended to cover without limitation all those persons of education, ability and accomplishment in any calling who may be regarded as professionals...." *In re Seatrain Lines, Inc.*, 13 B.R. at 981, *citing In re Johns–Manville Corp.*, 60 B.R. 612 (Bankr.S.D.N.Y.1986). The Court would agree that "professional person," as contemplated by Section 327(a), is intended to apply to those persons intimately involved in the reorganization process—"to hold otherwise would open the door to court involvement in potentially absurd hiring situations—requiring the court to approve ratification of the whole spectrum of known specialty occupations...." *Id.*

The Court concludes by noting that this ruling is consistent with the ruling made by the Chief Bankruptcy Judge of this District when he stated: "Compensation and corresponding expenses will be allowed from the estate ... [which] calculated to allowed expenses of ... 8.3 hours of compensation for Thomas A. Blake's services at $80.00 per hour ... [and] 4 hours of compensation for Joyce P. Gall's services...." [Using the one-half billing method.] *In re Brandenburger*, 145 B.R. 624 (Bankr.D.S.D. 1992).

Debtor's counsel may supply an appropriate order.