In re **BARRIE REED BUICK–GMC, INC., Debtor.**

**Bankruptcy No. 89–32458–BKC–SHF.**

United States Bankruptcy Court, S.D. Florida.

Feb. 22, 1994.

Geoffrey S. Aaronson, P.A., Miami, FL, for Barrie Reed Buick–GMC, Inc.

Daniel L. Bakst, pro se.

## ORDER ALLOWING FEES

STEVEN H. FRIEDMAN, Bankruptcy Judge.

AFTER NOTICE to all creditors, the Court has carefully reviewed the fee applications and has considered the criteria specified in 11 U.S.C. §§ 326 and 330 and the requirements of F.R.B.P. 2016, and makes the following findings:

The services rendered by Daniel Bakst, both as trustee and as attorney for trustee, were reasonable and necessary in the administration of this chapter 7 estate following the conversion of this case from a chapter 11 proceeding on January 9, 1990. Therefore, the Court awards Daniel Bakst, as trustee, fees in the amount of $5,535.62 plus expenses of $6.46. Further, the Court awards Daniel Bakst, as attorney for trustee, fees in the amount of $14,880.00.

■ In considering attorneys fees, courts of the Eleventh Circuit are required to consider the factors set forth in *First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) (The decisions of the Fifth Circuit before September 30, 1981, are binding precedent on the Courts of the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981)). The Court, having carefully reviewed the fee applications of Schantz, Schatzman and Aaronson, P.A., David Meisel, and Peterkin, Allen & Bailey, and having considered the factors delineated in *First Colonial*, deems it appropriate to reduce the aggregate fee requests of these three fee applicants by seventy-five (75%) percent. The factors set forth in *First Colonial* are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the professional services properly, (4) the preclusion of other employment due to the acceptance of the case, (5) the customary fee, (6) the fixed or contingent nature of the fee request, (7) the time limitations imposed by the client and other circumstances, (8) the amounts involved and the results obtained, (9) the experience, reputation and ability of the professionals, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. The only factors that the Court finds to have an affect on the three applications are: the time and labor required, the customary fee, the amounts involved and results obtained, and awards in similar cases.

(1) *Time and Labor Required:*

■ Schantz, Schatzman & Aaronson, P.A. ("*SSA*"), as lead counsel for the debtor-in-possession, seeks compensation for 371.65 hours expended between the May 18, 1989, chapter 11 petition date and the January 11, 1990, chapter 7 conversion date. David Meisel, Esq. ("*DM*"), as co-counsel for the debtor-in-possession, seeks compensation for 87.30 hours expended during the referenced time period. Peterkin, Allen & Bailey ("*PAB*"), as accountant for the debtor-in-possession, seeks compensation for 487.20 hours expended during the referenced time period. As to all three chapter 11 administrative fee applicants, the Court finds the magnitude of time expended to be excessive.

At least 130 hours of the 371.65 hours for which *SSA* seeks compensation are devoted solely to telephone calls made by the four attorneys and one paralegal who worked on this file at various times. All such telephone calls were billed for a minimum of one-quarter hour, although, based upon the descriptions contained in the *SSA* fee application, most of the matters discussed appear to have been of short duration. In addition, there are several instances where more than one of the *SSA* attorneys/paralegal billed for like time entries in a single day.

■ It is apparent from the record that *DM* was the pre-petition non-bankruptcy counsel for the debtor and was retained in an advisory capacity, and not as an active participant in the administration of this estate. It does not appear that he made a single court appearance, and over 57 hours of the 87.3 hours for which *DM* seeks compensation represent billings for telephone conferences.

■ *PAB's* time entries are devoid of specific delineation as to the nature of the services rendered. It appears that PAB assisted the debtor in the preparation of the bank-

ruptcy schedules and periodic debtor-in-possession reports during the pendency of the chapter 11 proceeding, as well as participation in conferences relating to the status of the bankruptcy proceeding. It is difficult for the Court to understand why it would be necessary for the debtor-in-possession to utilize accounting services equivalent to having two accountants work full time during the pendency of the chapter 11 proceeding (80 hours per month), particularly in light of the dismal failure of this chapter 11 proceeding.

(2) *The Customary Fee:*

 *SSA* seeks average hourly compensation at the rate of $151.97. *DM* seeks average hourly compensation at the rate of $243.81, and *PAB* seeks average hourly compensation at the rate of $95.81. Considering the customary fees charged by other attorneys and accountants retained by or on behalf of chapter 11 and chapter 7 debtors in the South Florida area, the Court finds the average hourly rate sought by *SSA* and *PAB* to be reasonable. However, the Court finds the average hourly rate sought by *DM* excessive, particularly because of the advisory nature of the services which he rendered on behalf of this chapter 11 debtor. The foregoing is particularly true because, as previously stated, *DM* failed to make even one court appearance on behalf of the debtor-in-possession. However, in light of this Court's consideration of the other *First Colonial* factors below, no specific downward adjustment to the hourly rate sought by *DM* is necessary.

(3) *Amounts Involved and Results Obtained:*

 It is this *First Colonial* factor which constitutes the "Achilles' heel" of the three fee applications under consideration. After a thorough review of the record in this case, this Court is unable to discern any benefit achieved for any interested party of this proceeding, with the possible exception of the debtor and its principals. More significantly, during the eight month administration of this debtor in chapter 11, supposedly under the careful supervision of its counsel and accountants, this debtor incurred unpaid administrative claims exceeding $475,000.00. It is well-established that a debtor-in-possession is responsible for preserving the assets of the estate. *In re Florida Airlines, Inc.,* 110 B.R. 570 (M.D.Fla.1990). As concisely stated in *United Utensils Corp.,* 141 B.R. 306 (Bankr.W.D.Pa.1992):

> An attorney for the Debtor has a fiduciary duty not only to the debtor, but a fiduciary obligation to act in the best interest of the entire estate, including creditors (citation omitted). If the debtor is not fulfilling its fiduciary obligation to the estate, it is the responsibility and duty of debtor's counsel to bring such matters to the attention of the court.

*United Utensils,* 141 B.R. at 309.

 This Court cannot sanction the services rendered by the subject professionals when their failure to recognize the futility of the debtor's efforts to reorganize at least partially contributed to the extraordinary unpaid administrative expenses. In this respect, the services rendered by *PAB* as the accountant for the debtor-in-possession, are particularly suspect. Charged with the responsibility of preparing the debtor's tax reports and debtor-in-possession reports, it is incomprehensible that during the course of chapter 11, *PAB* could have been unaware that the debtor was incurring obligations for unpaid federal withholding taxes exceeding $268,000.00, and unpaid sales taxes due the State of Florida exceeding $72,000.00. Professionals employed by a debtor are entitled to compensation from the bankruptcy estate only if the services rendered were of a value to the administration of the estate or for its benefit. *In re Sandra Cotton, Inc.,* 91 B.R. 657 (W.D.N.Y.1988). Fees should not be allowed for services that benefit the debtor, but not the debtor's estate. *In re Latham,* 131 B.R. 238 (Bankr.S.D.Fla.1991); *In re Brandenburger,* 145 B.R. 624 (D.S.D.1992). Based upon an examination of the record, this Court is unable to discern any benefit generated as a result of the services performed by the counsel and accountant for the debtor-in-possession benefitting the creditors of this estate.

(4) *Awards in Similar Cases:*

In light of the failure of the chapter 11 proceeding, the fees awarded herein are consistent with awards in similar cases. *In re Kendavis Industries International, Inc.,* 91 B.R. 742 (Bankr.N.D.Tex.1988); *In re Coas-*

382

*tel Equities, Inc.,* 39 B.R. 304 (Bankr. S.D.Cal.1984).

Based on the foregoing, the Court awards fees and costs to *Schantz, Schatzman & Aaronson, P.A.* in the amount of $7,684.70 ($17,-220.00 fee award *less* $12,500.00 initial fee retainer, *plus* $2,964.70 cost reimbursement), *David Meisel, Esq.* in the amount of $5,901.20 ($5,321.25 fee award *plus* $579.95 cost reimbursement), and *Peterkin, Allen & Bailey* in the amount of $11,669.98. These fees shall be paid on a pro rata basis with other allowed chapter 11 administrative claims, pursuant to 11 U.S.C. § 726(b).

Specific findings and the considerations supporting the conclusions as to the fees awarded to Daniel Bakst, as trustee and as attorney for the trustee, will be prepared at the request of any party in interest if received by this Court within 10 days after the entry of this order.

**DONE and ORDERED.**